KENNEDY, J., delivered the opinion of the court, in which KETHLEDGE, J., joined. CLAY, J. (pp. 476-82), delivered a separate dissenting opinion.
OPINION
KENNEDY, Circuit Judge.
Defendanfi-Appellant Juan Eugenio Marrero was convicted of possessing with *460 intent to distribute crack cocaine and marijuana, for which crimes he was sentenced to 360 months’ imprisonment. On appeal, Marrero raises a plethora of arguments challenging his conviction and sentence. Primarily, he alleges that the district court violated his Sixth Amendment right to an attorney by refusing to appoint him substitute counsel and allowing him to represent himself at trial and sentencing. Because we determine that the district court did not abuse its discretion by denying Marrero’s request for a new attorney, and because his remaining claims lack merit, we AFFIRM.
FACTUAL AND PROCEDURAL BACKGROUND
On the evening of October 2, 2007, Sergeant Paul Kenny of the Grand Rapids Police Department and Michigan State Troopers Bob Watson and Chris Bush went looking for Marrero at an apartment complex in Comstock Park, Michigan. Information gathered in an ongoing drug-trafficking investigation indicated that Marrero was selling cocaine, and the officers wanted to question him. After a resident directed the officers to a particular apartment unit, Sergeant Kenny knocked on the door and Marrero’s girlfriend, Tina Walters, answered. Walters told the officers that Marrero was not currently there and gave them permission to come in and look for him. The officers’ sweep of the apartment verified that Marrero was not inside, but in the kitchen they found crack cocaine residue, a digital scale, and Marrero’s Bridge Card[1] next to an active burner. Surmising that the stove had recently been used to cook crack cocaine, the officers decided to canvass the area for Marrero.
In a common-area laundry room down the hall from the apartment, Trooper Bush discovered Marrero hiding inside of a dryer. Trooper Bush ordered Marrero to emerge, called Trooper Watson into the room, and attempted to handcuff Marrero. At that point, Marrero began to resist arrest by punching and kicking the troopers and trying to run away. In the resulting melee, Marrero — undeterred by multiple stuns from Trooper Bush’s taser— managed to pull the troopers into the hall. Sergeant Kenny, who had remained in the apartment to speak with Walters, joined the scuffle upon hearing the troopers’ calls for help, and the three officers finally managed to subdue Marrero. The officers each sustained minor injuries; Marrero emerged with several rug burns on his face, more than a dozen taser stuns, and complaints about pain in his shoulder, which had been injured prior to his encounter with the officers.
Once Marrero was secured, Trooper Bush returned to the laundry room, where he found 27.25 grams of crack cocaine in a washing machine. Police obtained a search warrant for the apartment, from which they recovered a total of 209.54 grams of marijuana in addition to the crack cocaine residue and other evidence found in the kitchen. Meanwhile, Marrero was examined by medical personnel, signed a waiver declining hospitalization, and was provided some water. Approximately half an hour after his arrest, Sergeant Kenny advised Marrero of his Miranda rights and Marrero agreed to speak. During the course of his conversation with Sergeant Kenny, Marrero admitted that: he had fought the officers because he did not want to go to prison; the crack cocaine seized from the laundry *461 room was his; earlier that day, he had purchased $800 of cocaine that he planned to turn into crack cocaine; and the marijuana found in the apartment was his and he intended to sell it. Marrero was placed in state custody.
On November 7, 2007, Marrero was indicted in the United States District Court for the Western District of Michigan on two counts: possession with intent to distribute five or more grams of cocaine base and possession with intent to distribute marijuana, both in violation of 21 U.S.C. § 841(a)(1). A magistrate judge issued a writ of habeas corpus ad prosequendum directing the state to surrender Marrero to federal custody. Marrero had his first appearance in federal court on November 15, 2007, and the magistrate judge appointed Attorney Richard E. Zambón to represent him.
After initially pleading not guilty, Marrero pleaded guilty to the crack cocaine charge pursuant to a plea agreement on January 3, 2008. In exchange for Marrero’s plea, the Government promised to dismiss the marijuana charge and to decline seeking an enhanced penalty based on Marrero’s previous felony drug convictions. The district court scheduled sentencing for April 21, 2008, and directed that a presentence investigation report (“PSR”) be prepared. Marrero received the PSR in March of 2008.
On April 14, 2008, Marrero filed a pro se letter with the district court purporting to contain the following four motions, reprinted verbatim: “(1) motion to withdraw guilty plea[;] (2) motion for failed to appointment a truth federal public defendar counsel violation of Sixth Ammendment[;] (3) motion for evidentuary hearing for ineffective assistance of councel[;] (4) motion for lock of jurisdiction.” Additionally, on April 17, 2008, Marrero filed a pro se document titled “petition for writ of habeas corpus and subjiciendum [sic],” which was based on the district court’s alleged lack of jurisdiction. The district court considered all of Marrero’s motions at a hearing on April 21, 2008, the date scheduled for sentencing. During this proceeding, the district court determined that Marrero wished to withdraw his guilty plea because he wanted “to challenge everything.” Marrero’s primary contentions seemed related to the district court’s jurisdiction — he believed that the federal court lacked jurisdiction over his case because he was originally charged and bound over for trial in the state court — and his potential sentence — he was convinced that a bill introduced in, but not passed by, the United States House of Representatives had eliminated the sentencing disparity between crack-and powder-cocaine offenses. Furthermore, the district court ascertained that Marrero wanted a new attorney because “me and him [Zambón] we don’t get along and everything.... [W]e always see for different point of view.” In particular, Marrero complained that Zambón had pressured him to plead guilty without allowing him to raise the above arguments to the court. He also objected to the fact that Zambón was not an employee of the federal defender’s office.
After attempting to explain to Marrero that his jurisdictional and sentencing claims lacked merit, the district court denied his request for substitute counsel, insisting that all of his conflicts with his attorney were based on his “total and complete misperceptions as to what the law is.” Nevertheless, the district court allowed Marrero to withdraw his guilty plea, though it denied all of his other motions. A jury trial on both counts of the indictment was scheduled to begin on May 28, 2008. On April 25, 2008, the Government filed a supplemental information listing Marrero’s three prior state-court convic *462 tions for felony drug crimes, which elevated the statutory mandatory-minimum sentence applicable to the charged offenses.
On May 8, 2008, Zambón filed a motion on behalf of Marrero stating that Marrero wanted to represent himself at trial. At the district court’s hearing on the motion, held on May 16, 2008, Marrero clarified that he wished to proceed without counsel only “[bjecause I can’t get a new lawyer.” In response to the district court’s inquiry into the nature of the conflict between Marrero and Zambón, Marrero insisted that “we got a conflict in every point” and “I don’t see how I can go in trial and be properly represented while me and my attorney we have a conflict from the day we started.” Specifically, Marrero again complained that Zambón refused to act on his previously raised objections to the district court’s jurisdiction and the disparate penalties applicable to crack- and powder-cocaine offenses. Marrero also objected to Zambon’s failure to challenge his indictment before a grand jury, as he believed he had a right to do. Finally, Marrero expressed dissatisfaction with Zambon’s response to his numerous requests for documents related to his case, saying he had belatedly provided him with the police report and did not procure for him the search warrant or the order to transfer him from state to federal custody.
After allowing Marrero to detail his conflict with Zambón, the district court concluded that “99 percent of it, if not a hundred percent of it, goes to [Marrero’s] misunderstanding of exactly how the federal system works vis-a-vis the state government.” The district court further explained as follows:
Mr. Marrero has clearly asked for the appointment of another federal defender or CJA attorney to represent him in this case. And one of the purposes of my inquiring as to whether what [sic] those sources of conflict were to get on the record exactly all of those sources of conflict. And to the extent that there isn’t any ambiguity there, the Court would find that based on the alleged conflicts that the defendant has with Mr. Zambón, none of those either singularly or collectively would cause me to discharge Mr. Zambón and give the defendant another court-appointed lawyer, because as I’ve said before, nearly 100 percent of the alleged conflicts here represents the defendant’s fundamental misunderstanding of the law, which Mr. Zambón has clearly correctly provided to the defendant, but he chooses not to accept. So on the record before that we made at an earlier proceeding, and on this record, I would not allow Mr. Marrero to receive another lawyer, because there is no reason to discharge Mr. Zambón in the Court’s judgment.
The district court found that Marrero had “knowingly and intelligently and voluntarily waived his right to counsel,” and gave him permission to represent himself with Zambón as standby counsel. This arrangement remained in place throughout Marrero’s trial and sentencing.
On the eve of trial, May 27, 2008, Marrero filed a “motion to dismiss the indictment.” The district court construed the filing as a motion to suppress the 27.25 grams of crack cocaine recovered from the laundry room, the 209.54 grams of marijuana found in the apartment, and Marrero’s post-arrest statements to Sergeant Kenny. After holding an evidentiary hearing on these issues the morning of May 28, 2008, the district court denied Marrero’s motion to suppress on all grounds.
Marrero’s case proceeded to trial on the afternoon of May 28, 2008. The following day, the jury convicted Marrero on both counts of the indictment. On July 23, 2008, Marrero received a revised PSR *463 based on the report prepared in anticipation of sentencing under his guilty plea. He stated two objections to the PSR: first, he contested the calculation of his base offense level under U.S.S.G. § 2Dl.l(c)(7), complaining of the sentencing disparity between crack- and powder-cocaine offenses; second, he challenged the application of an obstruction-of-justice enhancement under U.S.S.G. § 3C1.2. The district court sentenced Marrero on August 11, 2008. After overruling his objections, the district court calculated his Guidelines range based on the career-offender provisions of U.S.S.G. § 4B1.1 and imposed a within-Guidelines sentence of 360 months’ imprisonment.
Marrero timely appealed his conviction and sentence. Though Zambón initially filed an appearance as Marrero’s appellate counsel, this Court granted his motion to withdraw and appointed another attorney to represent Marrero on appeal.
ANALYSIS
Marrero appeals a number of the district court’s rulings affecting his conviction and sentence. First and foremost, he claims that the district court violated his Sixth Amendment right to counsel by refusing to appoint him substitute counsel, essentially forcing him into the Hobson’s choice of proceeding to trial with a counsel he mistrusted or representing himself. Marrero also challenges his conviction based on the denial of his motion to suppress evidence, the admission of testimony at trial describing his fight with police officers prior to his arrest, the Government’s use of a police report to refresh the recollection of a trial witness, and the sufficiency of the evidence supporting his conviction. Additionally, Marrero objects to his sentence, alleging that his sentencing hearing was convened in violation Rule 32(e)(2) of the Federal Criminal Rules of Procedure, that his sentence should be vacated and the case remanded under Kimbrough v. United States, 552 U.S. 85, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007), and that a remand for resentencing is warranted in light of the Fair Sentencing Act of 2010, Pub.L. 111-220, 124 Stat. 2372.[2] None of these arguments warrant overturning Marrero’s conviction or sentence.
I. Sixth Amendment Right to Counsel
Marrero first asserts that the district court “forced [him] to forego counsel and proceed to trial pro-se [sic] against his wishes,” thereby violating his Sixth Amendment right to counsel. Although the district court conducted the model inquiry recommended by this Court whenever a defendant seeks to represent himself, and made an express finding that Marrero had knowingly and voluntarily waived his right to counsel, see United States v. McDowell, 814 F.2d 245, 250 (6th Cir.1987), Marrero insisted that “what [he] really wanted [was] a new attorney,” not self-representation. Marrero reiterated this objection throughout district court proceedings, when he complained several times that he was “forced to represent [himjself” because the district court did not honor his “need” for a new attorney. See also Trial Tr. vol. 2, 145, May 29, 2008, ECF No. 55 (“I don’t got no defense, that’s why I representing myself right now, because me and my attorney we have some problems.... ”); Sentencing Hr’g Tr. 2-3, *464 Aug. 11, 2008, ECF No. 56 (“I never wished to in the beginning to represent myself, they were basically forced on me.... I want an attorney to represent me. I never asked for me to represent myself.”). He now renews this argument on appeal.
The Sixth Amendment secures to a defendant who faces incarceration the right to counsel at all “critical stages” of the criminal process. United States v. Wade, 388 U.S. 218, 224, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). This right must be knowingly and intelligently waived by a defendant electing to represent himself. Faretta v. California, 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). However, the right to counsel does not guarantee that a criminal defendant will be represented by a particular attorney. Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 624, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989). “An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate ‘good cause’ to warrant substitution of counsel.” United States v. Iles, 906 F.2d 1122, 1130 (6th Cir.1990). “[A] persistent, unreasonable demand for dismissal of counsel and appointment of new counsel is the functional equivalent of a valid waiver of counsel.” United States v. Green, 388 F.3d 918, 921 (6th Cir.2004) (internal quotation marks and alterations omitted); see also King v. Bobby, 433 F.3d 483, 492 (6th Cir.2006) (“[B]y rejecting all of his options except self-representation, [the defendant] necessarily chose self-representation.”). Therefore, “[r]esolution of whether [Marrero]’s decision to proceed pro se was voluntary hinges on whether [his] objections to [his] present counsel had such merit as to entitle [him] to have new counsel appointed.” United States v. Schmidt, 105 F.3d 82, 89 (2d Cir.1997).
We review for abuse of discretion the district court’s decision that an indigent defendant failed to demonstrate good cause for substitute counsel. United States v. Mooneyham, 473 F.3d 280, 291 (6th Cir.2007). Whether the denial of a request for substitute counsel is an abuse of discretion depends on the following considerations:
[1] the timeliness of the motion; [2] the adequacy of the court’s inquiry into the defendant’s complaint; ... [3] whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense[; and] [4] a balancing of the accused’s right to counsel of his choice and the public’s interest in the prompt and efficient administration of justice.
United States v. Jennings, 83 F.3d 145, 148 (6th Cir.1996) (quoting Res, 906 F.2d at 1130 n. 8). Balancing these factors, we ultimately find that the district court did not abuse its discretion by refusing to appoint a new attorney for Marrero. Therefore, Marrero was not deprived of his Sixth Amendment right to counsel.

1. Timeliness

The timeliness of Marrero’s requests for a new attorney does not lend strong support to either Marrero’s claim or the district court’s decision. On the one hand, Marrero did seem to belatedly convey his dissatisfaction with Zambon’s representation to the district court. Marrero’s original motion for substitute counsel was filed almost fifteen weeks after the entry of his guilty plea — and only five days before his scheduled sentencing date — even though a major source of Marrero’s conflict with Zambón was that “[he] never want[ed] a plea bargain” and “[he] wantfed] to take [his case] to trial no matter what.” This Court has previously found that a comparable, ten-week delay renders a motion for *465 substitute counsel untimely. See United States v. Gilliam, 384 Fed.Appx. 497, 498 (6th Cir.2010). Marrero made his second request for different representation only two-and-a-half weeks later, when Zambón filed the motion asking the district court to allow Marrero to represent himself. Still, by that time, only three weeks remained before Marrero’s trial was scheduled to begin. Again, past decisions of this Court reflect that motions for substitute counsel may be untimely when filed at similar times before a defendant’s trial date. See, e.g., United States v. Williams, 176 F.3d 301, 314 (6th Cir.1999) (two weeks).
On the other hand, when considering both of Marrero’s motions, the district court did not express any concerns about their timeliness. Indeed, the district court granted Marrero’s motion to withdraw his guilty plea, filed on the same day as his first motion for substitute counsel, even though timeliness is also a factor in this Court’s review of those requests. See United States v. Ellis, 470 F.3d 275, 281 (6th Cir.2006) (“This Court considers a number of factors to determine whether Defendant meets the burden of proving that the withdrawal of his guilty plea is for a fair and just reason, including: (1) the amount of time that elapsed between the plea and the motion to withdraw it....” (internal quotation marks omitted)). And, while Marrero renewed his request only three weeks before the scheduled trial, this is not a case where the defendant had awaited trial for months without any complaints regarding his representation, only to bring a last-minute motion for substitute counsel. Cf. United States v. Chambers, 441 F.3d 438, 447 (6th Cir.2006) (finding untimely a motion for substitute counsel brought one-and-a-half months before trial, when proceedings had progressed slowly and discovery had been complete for nearly one year). After allowing Marrero to withdraw his guilty plea, the district court scheduled his trial to begin in only five-and-a-half weeks; less than half of this time had elapsed when Zambón, on behalf of Marrero, filed the second motion.

2. Adequacy of the District Court’s Inquiry

The record of the district court’s hearings on Marrero’s motion for substitute counsel and the motion requesting self representation suggest that the district court adequately inquired into the source of Marrero’s conflict with Zambón. This Court’s prior decisions indicate that, to meet this requirement, the district court simply must allow a defendant the opportunity to explain the attorney-client conflict as he perceives it. See United States v. Vasquez, 560 F.3d 461, 467 (6th Cir.2009) (“The record demonstrates that the district court engaged in multiple lengthy discussions with both [the defendant] and [his attorney] that span many transcript pages regarding their alleged conflicts. During these exchanges, [the defendant] had ample opportunity to discuss in detail his complaints regarding [his attorney] and respond to [his attorney]’s representations regarding their relationship.”); Chambers, 441 F.3d at 447 (“It appears to us that the district court allowed [the defendant] adequate opportunity to explain his concerns and allowed counsel to respond.”); United States v. Saldivar-Trujillo, 380 F.3d 274, 278 (6th Cir.2004) (“Our review of the sentencing hearing shows that the district court ... allowed [the defendant], his defense counsel, and the prosecutor the opportunity to address the complaint at issue. We conclude that this inquiry was adequate because it allowed all of the interested parties to present their respective evidence and arguments.”).
At the first hearing, the district court allowed Marrero to go on at length about his differences of opinion with Zambón as *466 to his plea bargain. About eight pages of the transcript of the second motion hearing are dedicated to the district court’s attempts to nail down the nature of Marrero’s dissatisfaction with Zambón. This included questions about the extent to which the conflict affected Marrero’s, ability to defend his case. Zambón also got the chance to voice his opinions. After the district court concluded its inquiry, it acknowledged that “IVe tried as best I can to get on the record exactly what the natures of the dispute here are,” and later noted that “one of the purposes of my inquiring as to whether what [sic] those sources of conflict were to get on the record exactly all of those sources of conflict.” Thus, it appears from the record that Marrero had the chance to fully describe his objections to Zambon’s representation, and the district court satisfied its obligation to determine the sources of his complaint.
This conclusion is unaffected by the fact that, at the second motion hearing, the district court launched into an inquiry as to whether Marrero was equipped to represent himself, see McDowell, 814 F.2d at 250, after it allowed Marrero to describe his conflict with Zambón. The record reflects that the district court appreciated that the motion to proceed pro se, filed by Zambón, was actually motivated by Marrero’s desire for a new attorney. See Mot. Hr’g Tr. 22, May 16, 2008, ECF No. 51 (“Mr. Marrero has clearly asked for the appointment of another federal defender or CJA attorney to represent him in this ease.”). The district court denied that request. Id. (“[0]n the record before that we made at an earlier proceeding, and on this record, I would not allow Mr. Marrero to receive another lawyer, because there is no reason to discharge Mr. Zambón in the Court’s judgment.”). If we conclude that the district court did not abuse its discretion in this regard, it was perfectly acceptable to leave Marrero with the choice of proceeding with Zambón as counsel or opting for self representation. See United States v. Eltayib, 88 F.3d 157, 168 (2d Cir.1996) (“Because the denial of [the defendant’s request for new counsel was proper, it was also proper to explain to [the defendant] that he was thus left with only two options: keeping this lawyer or proceeding pro se”).

3. Nature of the Conflict Between the Attorney and the Client

After determining the nature of the conflict between Marrero and Zambón, the district court could have concluded that it was not “so great that it resulted in a total lack of communication preventing an adequate defense.” Jennings, 83 F.3d at 148. To be sure, Marrero clearly indicated to the district court that he disagreed with Zambon’s strategy for defending his case. See, e.g., Mot. Hr’g Tr. 6, May 16, 2008, ECF No. 51 (“Me and him [Zambón], we got a conflict in every point, so if I have a conflict on every point with my attorney, so I don’t see how I can go in trial and be properly represented while me and my attorney we have a conflict from the day we started, so that’s not fair.”). Nonetheless, a defendant’s differences of opinions with his attorney do not create a complete breakdown of communication that compromises his defense. This Court has previously emphasized that a defendant’s “dissatisfaction with the responses he got from his lawyer, not with the lack of opportunity or his inability to talk to his lawyer or contact his lawyer,” does not establish a total lack of communication. Saldivar-Trujillo, 380 F.3d at 278 (internal quotation marks and alterations omitted). Moreover, a lack of communication resulting from a defendant’s refusal to cooperate with his attorney does not constitute good cause for substituting counsel. Vasquez, 560 F.3d at 468.
*467 In this case, the district court found that “nearly 100 percent of the alleged conflicts here represents the defendant’s fundamental misunderstanding of the law, which Mr. Zambón has clearly correctly provided to the defendant, but he chooses not to accept.” Given Marrero’s descriptions of his problems with Zambón, this factual finding is not clearly erroneous. Marrero never expressed concern about his ability to consult with Zambón about his case. Instead, Marrero believed that Zambón should be pursuing a number of meritless arguments, despite Zambon’s and the district court’s numerous attempts to explain why Marrero’s concerns were groundless. Marrero’s most significant complaint — that Zambón had somehow tricked him into pleading guilty — was accommodated by the district court when it allowed Marrero to withdraw his plea. After granting that request, it was reasonable for the district court to conclude that Marrero’s remaining objections did not merit substitution of counsel.

4. Prompt and Efficient Administration of Justice

The balance between Marrero’s right to the counsel of his choice and the public’s interest in the prompt and efficient administration of justice is, at most, equivocal, and perhaps even favors Marrero. From the district court’s perspective, “nearly 100 percent of the alleged conflicts [between Marrero and Zambón] represents the defendant’s fundamental misunderstanding of the law.” Therefore, the district court may have reasoned, “[g]ranting [Marrero’s] request for substitute counsel ... would actually have impeded the efficient administration of justice because his complaints about his attorney’s performance were frivolous.” Saldivar-Trujillo, 380 F.3d at 278; see also United States v. Pittman, 11 Fed.Appx. 521, 526 (6th Cir.2001) (noting that defendant has “little legitimate interest in obtaining new counsel” when “the court [finds] that the dispute [the defendant had] with his counsel was such as he would likely have had with any counsel”).
However, the district court proceedings undercut this line of reasoning. It is difficult to see how granting either of Marrero’s requests for a new attorney would have caused any additional delay in his case. Because the district court decided Marrero’s first motion for substitute counsel at the same time it permitted him to withdraw his guilty plea, this disposition coincided with a necessary rearrangement of the district court’s schedule for Marrero’s case. It was not as if Marrero requested new counsel in the middle of trial, at the expense of great time and effort already put forth by the Government. Cf. United States v. Sullivan, 431 F.3d 976, 982 (6th Cir.2005) (finding that “the record does not reflect that the prompt and efficient administration of justice would have been served by the substitution of counsel and the attendant continuance such a substitution would have required,” when defendant brought his motion five days after the Government rested in a jury trial involving forty-two government witnesses). When Marrero elected to proceed pro se just three weeks before the scheduled trial date, the district court saw no need to grant a continuance. If three weeks was sufficient for Marrero, a layperson, to get ready for trial, a trained attorney should also have had adequate time to prepare the case without additional delay. If anything, it seems efficiency concerns would counsel the appointment of substitute counsel, rather than risk “the possibilities of delay and confusion that are inherent in a pro se trial.” United States v. Bertoli 994 F.2d 1002, 1018 (3d Cir.1993).

5. Conclusion

In sum, neither the timeliness of Marrero’s requests for substitute counsel nor *468 consideration of the public interest dictate the district court’s proper course of action for ruling on Marrero’s request for new counsel. We conclude that the adequacy of the district court’s inquiry into Marrero’s complaints and the nature of the conflict between Marrero and Zambón tip the scales toward a conclusion that the district court did not abuse its discretion. Therefore, the district court did not violate Marrero’s Sixth Amendment rights.
II. Motion to Suppress
Marrero next appeals on several grounds the district court’s denial of his motion to suppress the drugs recovered from the apartment and laundry room, as well as his statements to police officers after his arrest. “When reviewing the district court’s decision regarding a motion to suppress, we review its factual findings for clear error and its legal conclusions de novo.” United States v. Hughes, 606 F.3d 311, 315 (6th Cir.2010) (emphasis added) (internal quotation marks omitted). Because the district court denied Marrero’s motion, we consider the evidence in the light most favorable to the Government. United States v. Carter, 378 F.3d 584, 587 (6th Cir.2004) (en banc).
A. Basis for Arrest and Detention
Marrero first contends that there was no basis to detain and arrest him, and therefore the drugs subsequently recovered and his statements to police should be suppressed as fruit of the poisonous tree. See Wong Sun v. United States, 371 U.S. 471, 484-85, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Essentially, Marrero alleges that, upon finding him hiding in the laundry room, the police immediately arrested him without probable cause. Consequently, he asserts, all the evidence subsequently obtained by the police is tainted by this Fourth Amendment violation.
The Government argues that Marrero did not raise this issue in the district court, so our consideration of it is confined to, at most, plain error review. See United States v. Caldwell, 518 F.3d 426, 430 (6th Cir.2008) (“[T]here is some debate over whether we should treat a suppression argument raised for the first time on appeal as a waiver (subject to review only if defendant can show “good cause”), or a forfeiture (subject to “plain error” review) .... ” (citations omitted)). However, a careful reading of the record reveals that Marrero did allude to these issues in the district court: his motion complains that police lacked an “order for arrest” when they arrived at the apartment complex on October 2, 2007, and at the suppression hearing Marrero again argued that the officers were not “justified” in arresting him. Given the leniency courts afford pro se litigants, see, e.g., Spotts v. United States, 429 F.3d 248, 250 (6th Cir.2005), we consider this claim preserved.
Nevertheless, Marrero’s claim fails on the merits, as the record reflects that Marrero’s arrest met the standards of the Fourth Amendment. “[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed.” Devenpeck v. Alford, 543 U.S. 146, 152, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004). “Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed.” Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); see also Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). When the officers arrived at the apartment complex on the evening of October 2, 2008, they were acting on infor *469 mation, obtained from individuals arrested earlier that day, that Marrero had sold those individuals crack cocaine. After receiving consent from an apparent resident to search the apartment where they believed Marrero was staying, they observed crack cocaine residue and a digital scale next to still-hot burner. Marrero was then discovered hiding from the officers in the apartment building’s laundry room, inside of a dryer. At this point, the officers reasonably believed that Marrero had been engaged in the manufacture of crack cocaine, giving them probable cause for arrest. If these facts alone were not sufficient, Marrero then began fighting the officers in an attempt to escape, providing further justification for his arrest. Therefore, the district court did not err in concluding that probable cause supported Marrero’s arrest and detention.
B. Search of the Premises
Marrero next contends that the search of the premises after his arrest “clearly exceeded that necessary,” and so the crack cocaine recovered from the laundry room and the marijuana seized from the apartment should be suppressed. In essence, Marrero claims that the officers searched the apartment before they obtained a search warrant, that they searched the laundry room without obtaining a warrant at all, and that neither search fell within any exceptions to the warrant requirement.
As an initial matter, the Government challenges Marrero’s standing to object to a search of either the apartment or the laundry room, arguing that he lacked a legitimate expectation of privacy in either space. See Rakas v. Illinois, 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) (“[C]apaeity to claim the protection of the Fourth Amendment depends ... upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place.”). The district court agreed with respect to the laundry room, reasoning that it was a common area of the apartment complex. The district court’s finding that the laundry room was accessible to the public is not clearly erroneous, and it did not err in admitting the crack cocaine the police found hidden in a washing machine. See United States v. Dillard, 438 F.3d 675, 682-83 (6th Cir.2006) (“[The defendant] did not have a reasonable expectation of privacy in the common hallway and stairway of his duplex that were unlocked and open to the public.”).
As for the search of the apartment, the Government points to Marrero’s repeated statements in the district court denying that he was living there, see, e.g., Trial Tr. vol. 2, 302, May 29, 2008, ECF No. 55 (accepting jury instruction submitted by the defense stating that “[t]he defense says the drugs did not belong to him and he did not live at the apartment in question, and he was never in the laundry room”), as evidence that he lacked the requisite expectation of privacy in the apartment. See Minnesota v. Carter, 525 U.S. 83, 90-91, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998) (holding that defendants had no legitimate expectation of privacy in, and thus could not challenge the search of, another’s dwelling which they had visited only for the commercial purpose of bagging cocaine). The district court did not determine whether Marrero was actually living in the apartment, and we are hesitant to rule on this issue without the benefit of a factual finding on this point. Regardless, the district court did find that the relevant search and seizure of the marijuana occurred after the police secured a valid search warrant. This conclusion is not clearly erroneous, and the district court did not err in its decision that the *470 seizure of the marijuana complied with the Fourth Amendment.
C. Voluntariness of Statements
Finally, Marrero contests the admission of his post-arrest statements, claiming they were given involuntarily. See Oregon v. Elstad, 470 U.S. 298, 304-05, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). Specifically, Marrero claims that police questioned him when he was “unable to fully and knowingly participate in any conversation” due to the fact that he had been stunned with a taser multiple times during his struggle with police officers. While a statement is involuntary, and thus inadmissible, when “obtained by ‘techniques and methods offensive to due process’ or under circumstances in which the suspect clearly had no opportunity to exercise ‘a free and unconstrained will,’” id. at 304, 105 S.Ct. 1285 (quoting Haynes v. Washington, 373 U.S. 503, 515, 514, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963)), the officers in this case did not question Marrero under coercive circumstances. Officer Kenny’s testimony at the evidentiary hearing reflects that, prior to questioning, Marrero was given water and the opportunity to rest. Furthermore, Marrero was examined by medical personnel, and he declined to go to the hospital. Based on the evidence presented, the district court found “no evidence whatsoever of coercion or threats or other force being used by the police officers to adduce a statement from the defendant.” Thus, the district court did not err by refusing to suppress Marrero’s statements to police as an involuntary confession.
Marrero also challenges the admissibility of his confession under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). After Miranda, “[statements made by a defendant in response to interrogation while in police custody are not admissible unless the defendant has first been apprized [sic] of the constitutional right against self-incrimination and has validly waived this right.” United States v. Cole, 315 F.3d 633, 636 (6th Cir.2003). Marrero alleges that he was questioned by police before being given the Miranda warnings. However, at the suppression hearing, Officer Kenny testified that he administered the Miranda warnings to Marrero before questioning began. As a result, the district court determined that “the defendant was given his Miranda warnings by the officer [and] he waived his rights to speak to the officer without the benefit of [a] lawyer.” This factual finding is not clearly erroneous.
Alternatively, Marrero claims that “the record shows that [Marrero] has difficulty with the English language, thus there is a real possibility that Appellant did not understand [his Miranda ] rights.” Marrero did not pursue this argument in the district court, and it finds no support in the record. Marrero had sufficient knowledge of the English language to represent himself throughout trial and sentencing, which fact belies the assertion that he was unable to comprehend the Miranda warnings. The admission of Marrero’s post-arrest statements did not violate Miranda.
III. Testimony Regarding Marrero’s Struggle with Police
Marrero next asserts that the district court erred by allowing the arresting officers to testify about their struggle with Marrero when they found and tried to detain him. According to Marrero, this testimony constituted character evidence of “other crimes, wrongs, or acts,” and is therefore inadmissible under Rule 404(b) of the Federal Rules of Evidence. Because Marrero failed to object to this issue at trial, we review it for plain error under Rule 52(b) of the Federal Rules of Crimi *471 nal Procedure. See Puckett v. United States, 556 U.S. 129, 129 S.Ct. 1423, 1429, 173 L.Ed.2d 266 (2009). To establish plain error, Marrero must show an “error” that was “clear or obvious,” that “affected [his] substantial rights,” and that “ ‘seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.’ ” Id. (quoting United States v. Olano, 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). “Meeting all four prongs is difficult, as it should be.” Id. (internal quotation marks omitted).
Rule 404(b) provides that “[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.” Fed.R.Evid. 404(b). “Where the challenged evidence is ‘intrinsic’ to, or ‘inextricably intertwined’ with evidence of, the crime charged, Rule 404(b) is not applicable.” United States v. Henderson, 626 F.3d 326, 338 (6th Cir.2010). That is:
Proper background evidence has a causal, temporal or spatial connection with the charged offense. Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness’s testimony, or completes the story of the charged offense.
United States v. Hardy, 228 F.3d 745, 748 (6th Cir.2000).
The circumstances under which police officers apprehended Marrero are inextricably intertwined with evidence of the possession crimes with which he was later charged. See Henderson, 626 F.3d at 338. Marrero’s attempt to hide from police officers inside a dryer, the officers’ discovery of Marrero, and the ensuing struggle all have a temporal connection to, and completes the story of, the charged offense. See Hardy, 228 F.3d at 748. Therefore, it was not error, let alone plain error, for the district court to allow the admission of this evidence.
IV. Use of a Police Report to Refresh a Witness’s Recollection
Marrero also challenges the district court’s overruling of his objection to the Government’s use of a search warrant tabulation report to refresh the recollection of a witness, Officer Danielle Brennan. Marrero argues that the court erred by allowing Officer Brennan to refresh her recollection with the report because it “was not made by her, nor was it adopted by her.” “We review for abuse of discretion the district court’s evidentiary rulings.” United States v. Wagner, 382 F.3d 598, 616 (6th Cir.2004). That is, we will overturn a ruling on the admissibility of evidence only if the district court “committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors[,] ... improperly applie[d] the law[,] or use[d] an erroneous legal standard.” United States v. Haywood, 280 F.3d 715, 720 (6th Cir.2002) (internal quotation marks omitted). Additionally, “Reversal is appropriate only if the abuse [of discretion] was not harmless error,” that is, only if the erroneous evidentiary ruling affected the outcome of the trial. United States v. Vasilakos, 508 F.3d 401, 406 (6th Cir.2007) (internal quotation marks omitted).
Rule 612 of the Federal Rules of Evidence authorizes a party to refresh a witness’s memory with a writing so long as the “adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness.” Fed.R.Evid. 612. By its terms, *472 Rule 612 does not limit the type of writings that might be used as refreshers, and “[t]he propriety of permitting a witness to refresh his memory from a writing prepared by another largely lies within the sound discretion of the trial court.” Rush v. Ill. Cent. R.R. Co., 399 F.3d 705, 716 (6th Cir.2005). The fact that the warrant tabulation report was prepared by a person other than Officer Brennan does not establish that the district court abused its discretion by allowing her to refresh her recollection with it.
Furthermore, even if the district court erred by allowing Officer Brennan to refresh her recollection with the warrant tabulation report, any error is harmless. Officer Brennan’s refreshed testimony concerned where police had located the crack cocaine in the laundry room of the apartment complex. Specifically, she testified that the officers at the scene had found the crack cocaine in “[t]he far right washing machine.” At trial, the Government presented testimony of another officer, Trooper Chris Bush, that police recovered a quantity of crack cocaine from inside a washing machine in the laundry room. See Trial Tr. vol. 1, 120, May 28, 2009, ECF No. 54 (“[I]n the first dryer there, I opened it up or the first washing machine, I opened it up and looked down inside and I observed to me [sic] a large amount of crack cocaine, what I believed to be crack cocaine.”). Allowing Officer Brennan to confirm this testimony would be at most harmless error.
V. Sufficiency of the Evidence
Marrero also challenges his conviction as based on insufficient evidence, claiming that the Government did not prove that he had possession of the drugs recovered in the case or that he had the requisite intent to distribute the drugs. Though Marrero moved for a directed verdict at the close of the Government’s case, he did not renew this motion at the close of all proofs. “[W]here, as here, a defendant does not renew his motion for judgment of acquittal for insufficiency of the evidence at the close of all the proofs, appellate review is limited to determining whether there was a manifest miscarriage of justice.” United States v. Childs, 539 F.3d 552, 558 (6th Cir.2008) (internal quotation marks omitted). “Such a miscarriage of justice occurs only if the record is devoid of evidence pointing to guilt.” Id.
The record in this case is certainly not devoid of evidence of guilt, and includes testimony from the interrogating police officer relaying Marrero’s admissions that: the crack cocaine that police found in the laundry room was his; he had recently purchased $800 worth of cocaine from his supplier; he had cooked crack cocaine in the apartment about twenty minutes prior to the police’s arrival; and the marijuana found in the apartment was his and he intended to sell it. Additionally, a DEA drug expert testified that the amount of illegal drugs recovered in the case amounted to distribution quantities. Given this evidence, Marrero’s conviction does not amount to a manifest miscarriage of justice.
VI. Rule 32 Violation
Marrero next appeals the district court’s refusal of his request at sentencing for more time to review his PSR. Marrero argues that, because he represented himself at sentencing, he should have been given more time to review the PSR and navigate the “technical, complicated matters” that comprise the federal sentencing system. See also Sentencing Hr’g Tr. 7, Aug. 11, 2008, ECF No. 56 (“I didn’t have no time to work on [objections to the PSR]. I’m not professional. I don’t know what to do with this stuff. I needed time *473 to work on it, and they would not send it to me.... ”). We review the denial of a motion for a continuance for abuse of discretion. United States v. Roberge, 565 F.3d 1005, 1011 (6th Cir.2009).
Rule 32(e)(2) of the Federal Rules of Criminal Procedure provides that the probation officer must give the PSR to the defendant and his or her attorney “at least 35 days before sentencing unless the defendant waives this minimum period.” Fed.R.Crim.P. 32(e)(2). “This court has made it clear on several occasions that the district courts must be in literal compliance with the requirements of Rule 32.” United States v. Carter, 374 F.3d 399, 408 (6th Cir.2004) (internal quotation marks omitted), vacated on other grounds, 543 U.S. 1111, 125 S.Ct. 1056, 160 L.Ed.2d 1045 (2005). “Yet, although we emphasize the importance of Rule 32’s mandate, we review violations for harmless error.” Roberge, 565 F.3d at 1011. Remand is required unless the error “did not cause the defendant to receive a more severe sentence.” United States v. Lanesky, 494 F.3d 558, 561 (6th Cir.2007) (internal quotation marks omitted).
Marrero received his PSR on July 23, 2008, twenty days before his sentencing on August 11, 2008. Thus, the district court was not in strict compliance with Rule 32(e)(2). However, Marrero did not identify to this Court, or to the district court, any specific prejudice that he suffered from the court’s refusal to grant a continuance. In the district court, Marrero stated two objections to the PSR: an (erroneous) contention that federal law did not contain a disparity between the punishments imposed for drug crimes involving crack and powder cocaine and an objection to the imposition of a reckless-endangerment enhancement. He does not allege that his ability to argue these objections was negatively affected by his inability to prepare, nor does he point to any additional objections that he could have brought if given more time; neither does he challenge the accuracy of any facts recounted in the PSR. See United States v. Turner, 134 Fed.Appx. 17, 22 (6th Cir.2005) (“Actual prejudice is established by showing that a continuance would have made relevant witnesses available or added something to the defense.” (internal quotation marks omitted)); United States v. Archer, 70 F.3d 1149, 1151 (10th Cir.1995) (“Because defendant does not assert contradictory facts that challenge the accuracy of the PSR, he suffered no prejudice from the Rule 32 violation, and it would be meaningless to remand for resentencing.” (internal quotation marks omitted)).
Furthermore, Marrero had received a prior version of his PSR four months earlier, when he was awaiting sentencing after pleading guilty. That PSR was identical to the operative PSR, save for adjustments to account for the withdrawal of his plea and the filing of the Government’s supplemental information. Cf. United States v. Burke, 187 F.3d 638 (6th Cir.1999) (unpublished table decision) (concluding that ten-day period to review revised PSR was reasonable, and violation of Rule 32’s thirty-five-day-review requirement harmless, when “changes contained in the Revised PSR were technical, not substantive”). Given these facts, Marrero has not shown that strict compliance with Rule 32(e)(2) would have resulted in a different sentence, and the district court’s violation of Rule 32(e)(2) amounted to harmless error.
VII. Procedural Objection to Sentence
Marrero also challenges his sentence, arguing that the district court failed to appreciate its authority “to disagree with the 100:1 craek[-to-powder-]co *474 caine sentencing ratio[ ]”[3] incorporated in the Guidelines. [Appellant’s Br. 23.] Marrero relies on Kimbrough v. United States, 552 U.S. 85, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007), which held that a district court may vary a defendant’s sentence upon concluding that “the craek/powder disparity yields a sentence ‘greater than necessary’ to achieve § 3553(a)’s purposes, even in a mine-run case,” id. at 110, 128 S.Ct. 558. See also Spears v. United States, 555 U.S. 261, 129 S.Ct. 840, 843-44, 172 L.Ed.2d 596 (2009) (per curiam) (“[District courts are entitled to reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines.”). Though Marrero was sentenced under the career-offender provisions of U.S.S.G. § 4B1.1 rather than the drug-quantity table of U.S.S.G. § 2D1.1, the sentencing disparity between crack and powder cocaine offenses is “implicitly incorporated” in his career-offender enhancement. United States v. Michael, 576 F.3d 323, 327 (6th Cir.2009), cert. denied, — U.S. -, 130 S.Ct. 819, 175 L.Ed.2d 574 (2009). Therefore, the logic of Kimbrough and Spears still applies, and a “categorical disagreement with the [erack-to-powdercocaine] ratio may ... support a district court’s rejection of the career offender enhancement.” United States v. Curb, 625 F.3d 968, 972 (6th Cir.2010). Marrero claims that the district court did not understand its authority to categorically disagree with the crack-cocaine Guidelines, making his sentence procedurally deficient. See Moore v. United States, 555 U.S. 1, 129 S.Ct. 4, 172 L.Ed.2d 1 (2008) (per curiam); United States v. Johnson, 553 F.3d 990, 996 (6th Cir.2009).
In the proceedings below, Marrero repeatedly contested the application of the crack-cocaine disparity to his sentence. However, Marrero never argued to the district court that it should impose a downward departure based on a categorical disagreement with the Guidelines. Rather, he only argued for a downward departure based on his mistaken belief that Congress had eliminated the contested disparity. Additionally, Marrero responded negatively when, at the close of the sentencing hearing, the district court asked him whether he had “any other objections to the sentence ... imposed.” As a result, we review his request for remand under a plain-error standard. See United States v. Simmons, 587 F.3d 348, 354-58 (6th Cir.2009) (determining that plain-error review applied to defendant’s procedural argument for remand in light of Kimbrough, even though defendant’s counsel at sentencing had “devoted much of her argument [at sentencing] to the idea that a downward variance was warranted ... because of the Guidelines’ disparate treatment of crack and powder cocaine offenses” and had, when asked if she had additional objections, raised a vague objection to the “procedural, substantive aspects” of defendant’s sentence), cert. denied, — U.S. -, 130 S.Ct. 2116, 176 L.Ed.2d 741 (2010). See generally United States v. Vonner, 516 F.3d 382, 386 (6th Cir.2008) (en banc); United States v. Bostic, 371 F.3d 865, 872-73 (6th Cir.2004).
*475 As this Court previously held in Michael, “the district court’s error, if any, in failing affirmatively to recognize its discretion to reject the statutory 100:1 ratio as implicitly incorporated into U.S.S.G. § 4B1.1 was not plain.” 576 F.3d at 328 (citing United States v. Liddell, 543 F.3d 877, 885 (7th Cir.2008)). In this case, the district court explicitly recognized that “the guidelines are advisory to the Court.” It also discussed its consideration of the 18 U.S.C. § 3553(a) factors, explaining the basis for Marrero’s sentence in light of “the very serious nature of his offenses,” his “likelihood to recidivate” and penchant for “deceitful and exaggerating representations,” his need for “anger management help” and “drug education,” and the necessity of deterrence and protection of the public. As in Simmons, “[t]here is simply no indication whatsoever that the judge believed the Guidelines were mandatory, or that the court believed it was not free to vary downward based on both particularized circumstances of the crime and defendant or based on substantive disagreement with the crack Guidelines.” 587 F.3d at 364; cf. Johnson, 553 F.3d at 996 & n. 1 (remanding “so that the district court may impose a sentence with full awareness” of its authority under Spears, when the district court stated at sentencing that it “must” apply the Guidelines and this Court had “no way of ascertaining whether the district judge would have imposed the same sentence if he had known of his discretion to vary categorically from the crack-cocaine Guidelines based on a policy disagreement”). But see Curb, 625 F.3d at 973 (distinguishing Simmons and remanding for resentencing under Johnson). Under these circumstances, “we cannot say the district court’s explanation constitutes an error, let alone an error that *was obvious or clear,’ affecting the defendant’s substantial rights and calling into doubt ‘the fairness, integrity, or public reputation of the judicial proceedings.’ ” Simmons, 587 F.3d at 365 (quoting United States v. Gardiner, 463 F.3d 445, 459 (6th Cir.2006)).
VIII. Fair Sentencing Act of 2010
In a supplemental brief, Marrero asserts that he is entitled to the benefit of the Fair Sentencing Act of 2010, Pub.L. 111-220, 124 Stat. 2372. Marrero was convicted of possessing 27.25 grams of crack cocaine. At the time of his sentencing and by reason of his prior convictions, this offense carried a ten-year mandatory minimum sentence and a maximum sentence of life imprisonment; the Fair Sentencing Act amends these penalties to a thirty-year maximum sentence with no mandatory minimum sentence. Though Marrero’s 360-month sentence does not exceed the maximum sentence assigned to his offense by the Fair Sentencing Act, Marrero nevertheless argues that we should remand his case for resentencing with reference to the adjusted penalties now reflected in § 841(b).
In United States v. Carradine, 621 F.3d 575 (6th Cir.2010), cert. denied, — U.S. -, 131 S.Ct. 1706, 179 L.Ed.2d 637 (2011), this court determined that the Fair Sentencing Act’s penalty provisions do not apply to offenses committed prior to their enactment, id. at 580 (“The new law at issue here, the Fair Sentencing Act of 2010, contains no express statement that it is retroactive nor can we infer any such express intent from its plain language. Consequently, we must apply the penalty provision in place at the time [the defendant] committed the crime in question.”). Because Carradine is a prior published opinion of this court, we are bound by its pronouncement that the Fair Sentencing Act has no bearing on Marrero’s case. United States v. Greer, 415 Fed.Appx. 673, 676-77 (6th Cir.2011). There *476 fore, a remand for resentencing under the amended penalty provisions of § 841(b) is inappropriate.
CONCLUSION
For the foregoing reasons, we AFFIRM Marrero’s conviction and sentence.

. A Bridge Card is a debit card issued by the Michigan Department of Human Services to beneficiaries of its food assistance program.

. In a supplemental, pro se brief filed with permission of this Court, Marrero raises some additional claims challenging the validity of the search warrant and the federal government’s jurisdiction to prosecute him. We need not address those arguments because Marrero is represented by counsel. See United States v. Martinez, 588 F.3d 301, 327 (6th Cir.2009), cert. denied, - U.S. -, 131 S.Ct. 538, 178 L.Ed.2d 395 (2010). Additionally, those claims lack merit.

. In fact, by the time of Marrero’s sentencing, the Guidelines had been amended to reduce the 100:1 disparity for most crack cocaine offenses. See U.S.S.G. app. C, amend. 706. Nevertheless, it is clear that Marrero's argument “applies with equal force to sentencing decisions under the new crack-cocaine Guidelines,” and remand is warranted if the district court did not understand that it "may categorically reject and vary from the new Guidelines based on policy disagreements with those Guidelines.” United States v. Johnson, 553 F.3d 990, 996 (6th Cir.2009).