NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0331n.06
Case No. 20-6025

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jul 13, 2021
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| TROY J. McRATH, | ) ) | |
| Defendant-Appellant. | ) ) | |

BEFORE: BATCHELDER, KETHLEDGE, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. Troy McRath appeals his conviction and sentence for conspiring to distribute and possess with the intent to distribute at least 50 grams of methamphetamine. We affirm.

I.

Troy McRath was a street-level trafficker of methamphetamine. He would regularly buy the methamphetamine from Robert Leeper's drug distribution network. Leeper would bring the drugs in from California and pass them along to his top-level distributors. Those distributors would then sell it to mid-level distributors, who would in turn sell it to street dealers, like McRath.

A grand jury charged McRath (and many others) with conspiring to distribute and possess with the intent to distribute at least 50 grams of methamphetamine. 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846. At trial, several of McRath's coconspirators told the jury about their business with McRath—some bought from him; some sold to him; some used cash; some traded valuables (like

jewelry and firearms). These witnesses also linked McRath's business to Leeper's distribution network. McRath did not put on a defense. The jury found him guilty, and the district court entered judgment.

On appeal, McRath argues that there was insufficient evidence to support his conviction and offense level at sentencing. He also claims that the trial court improperly admitted evidence, and that his trial counsel was constitutionally ineffective.

II.

McRath contends that no rational factfinder could have found him guilty of conspiring to traffic at least 50 grams of methamphetamine. *See United States v. Childs*, 539 F.3d 552, 558 (2008). But when viewing the evidence in the light most favorable to the government, as we must, McRath falls well short.

To start, law enforcement seized more than 60 pounds (27,000 grams) of "actual meth" moving from California to Tennessee as part of Leeper's operation. The methamphetamine was "between 95 and 100 percent pure." *Id.* And multiple witnesses testified to McRath's place in the resulting chain of distribution. Given this evidence, a reasonable factfinder could conclude that McRath knowingly and voluntarily joined a conspiracy that "involv[ed]" at least 50 grams of methamphetamine. 21 U.S.C. § 841(b)(1)(A).

McRath speculates that mid-level dealers diluted the methamphetamine imported by Leeper before selling it to him. Even assuming this information would be relevant, no evidence in the record suggests such a practice. McRath cites witnesses' frequent references to dealers "breaking down" the drug. But this testimony described a division of *quantity*, not a dilution of *purity*. By dividing larger quantities into smaller ones, distributors could charge more overall than if they sold wholesale. In short, this testimony does not help McRath.

III.

McRath raises his next two challenges—concerning purported character evidence and the calculation of his offense level—for the first time on appeal, so we review for plain error. Fed. R. Crim. P. 52(b). Neither challenge shows error by the district court, let alone an error that is "obvious or clear." *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (citation omitted). So we reject these arguments as well.

A.

The prosecution offered evidence that McRath fled from police after stealing money from a confidential informant. McRath says that this evidence was inadmissible character evidence and unfairly prejudicial.

During its investigation, the Elizabethton Police Department set up a controlled buy between McRath and a confidential informant. An officer equipped the informant with $230 in cash and monitoring devices.

Several minutes after the officer dropped the informant off, the informant came running back to the officer's observation position. The informant appeared "terrified."

What happened? McRath was tipped off. Rather than hand over the gram of methamphetamine he had secured for the sale, he hit the informant and took the cash and monitoring devices.

When the officer found and approached McRath, McRath fled on his bike. Officers tracked him down and arrested him for robbery and evading arrest. While in jail, McRath made several (recorded) phone calls to warn a coconspirator that she would be the police's next target.

McRath asserts that this evidence was inadmissible under Rule 404(b) because it had no legitimate non-character purpose and should have been excluded under Rule 403 because the risk

of unfair prejudice substantially outweighed the evidence's probative value. *See United States v. Johnson*, 27 F.3d 1186, 1190 (6th Cir. 1994). We disagree.

Rule 404(b) does not apply to evidence of acts that are part of the same "continuing pattern of illegal activity" charged. *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995); 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 404.20[2][b] (Mark S. Brodin, ed., Matthew Bender 2021 update) ("[E]vidence intrinsic to the charged offense is not excluded by Rule 404(b)."). And even McRath acknowledges that his presence at the agreed-upon time and place for the controlled buy and later warnings to his coconspirator were intrinsic evidence of the conspiracy the government needed to prove. *See United States v. Buchanan*, 213 F.3d 302, 311 (6th Cir. 2000).

What about the robbery and flight from the police? This evidence was intrinsic as well for two reasons. First, it "complete[d] the story of" this particular episode in the conspiracy. *United States v. Marrero*, 651 F.3d 453, 471 (6th Cir. 2011). A juror who hears that the set-up of a controlled buy is indicative of a defendant's drug-dealing may reasonably expect proof that drugs were exchanged—and if they weren't, why not. *See Old Chief v. United States*, 519 U.S. 172, 188–89 (1997). Second, the evidence of a violent flight after being tipped off could indicate McRath's "consciousness of guilt" for his role in the conspiracy, from which the jury could then infer actual guilt. *United States v. Dillon*, 870 F.2d 1125, 1126–28 (6th Cir. 1989) (citation omitted). Testimony about McRath's actions before and after the controlled buy were admissible as highly probative intrinsic evidence.

Even so, says McRath, that probative value was substantially outweighed by the risk that the jury would punish McRath because he was a "bad" or "violent guy." *See* Fed. R. Evid. 403. But McRath's theft of a few hundred dollars, brief battery of an informant, and attempted flight

were hardly so inflammatory as to "lure" jurors to a guilty verdict just because McRath is dangerous or "deserves punishment." *Old Chief*, 519 U.S. at 180–81 (citation omitted). In fact, compared with testimony of McRath's year-long parade of death threats against a cooperating witness leading up to the trial, the hit-and-run evidence was positively anodyne. The district court did not abuse its discretion by admitting it.

### B.

McRath's other new challenge relates to the district court's calculation of his sentence. The district court set McRath's offense level under the Sentencing Guidelines based in part on the amount of trafficked drugs the court found were attributable to him—between 150 and 200 grams of actual methamphetamine. *See* U.S.S.G. § 2D1.1(a)(5), (c)(4). McRath does not challenge the quantity of drugs—rather, he again contests that the drugs can be considered actual methamphetamine (rather than a diluted mixture). We reject this argument for the reasons given above—the evidence does not support it.

### IV.

Lastly, McRath argues that defense counsel was constitutionally ineffective for failing to object to (1) the evidence of his robbery and flight and (2) the sufficiency of the evidence regarding the purity of the methamphetamine. *See Strickland v. Washington*, 466 U.S. 668 (1984). As we have explained, both objections would have been meritless. Thus, counsel cannot be considered ineffective for failing to raise them. *Id.* at 688–89, 700.

* * *

We affirm.