<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>

File Name: 15a0399n.06

Case No. 14-1315

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jun 02, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| *Plaintiff-Appellee,* | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| DELANO JOHNSON, | ) | |
| | ) | |
| *Defendant-Appellant.* | ) | |

OPINION

**BEFORE:  McKEAGUE and DONALD, Circuit Judges; MATTICE, District Judge.**[*]

**MATTICE, District Judge.**   On September 30, 2013, Defendant-Appellant Delano Johnson was convicted of one count of possession with intent to distribute heroin, one count of possession with intent to distribute cocaine base, and two counts of distribution of heroin following a three-day jury trial at which he was represented by court-appointed counsel.  On February 27, 2014, the district court found that Johnson qualified as a career offender pursuant to the U.S. Sentencing Guidelines § 4B1.1 and sentenced him to 262 months' imprisonment. Defendant timely appealed on February 28, 2014, and we now affirm the district court's judgment.

---

[*] The Honorable Harry S. Mattice, Jr., District Judge of the United States District Court for the Eastern District of Tennessee, sitting by designation.

## I.  BACKGROUND AND FACTS

Johnson was indicted on May 22, 2013, and attorney Stevens J. Jacobs was appointed by the court to represent him on June 25, 2013.  (Docs. 1, 3).  On September 13, 2013, at the final pretrial conference in this matter, Jacobs made a motion to withdraw from representation of Johnson, citing a "breakdown in communication."  (Doc. 38 at 21). The court then addressed Johnson, asking him to explain why he had requested that Jacobs be relieved of representation.  In response, Johnson stated:

> Well, actually, he – to be honest with you, I didn't ask for him to withdraw.  He asked to withdraw.  He said he was going to withdraw because he said it earlier when I was in the cell, that he would like . . . to withdraw because our communications has – like, it's been misunderstood, it's lack of communication.  So he said he was going to bring that up to you earlier before I came out here.

(*Id.* at 22). Following additional colloquy, the court recognized that Johnson had not identified a sufficient reason to relieve Jacobs of his responsibility of representing Johnson.  Thus, the court noted that the case would proceed to trial on September 25, 2013.  (*Id.* at 24-25).

On September 25, 2013, following the summons of the venire panel but before prospective jurors were brought into the courtroom, Jacobs renewed his request to withdraw from representation of Johnson and also requested an adjournment of the trial. (Doc. 39 at 5).  In support of his request, Jacobs informed the court that he and Johnson continued to have disagreements regarding trial strategy and also indicated that Johnson's family was attempting to retain substitute counsel for Johnson.  Jacobs stated to the court that Johnson did not "have any trust in [him]."  He also submitted that he and Johnson had "some major disagreements over how to address this trial and how to even address the cross-examination of witnesses."  (*Id.* at 6).

The court questioned Jacobs regarding his discussions with Johnson about his right to remain silent or provide testimony in his own defense and confirmed that Jacobs had made it

clear to Johnson that whether to testify or not was ultimately Johnson's decision. (Doc. 39 at 7). The Court's discussion with counsel delved into other bases of disagreement with Johnson. Following his exchange with counsel, the Court turned and asked "Mr. Johnson, has [counsel] at least done a good job in outlining the differences of opinion that you and he have?" At that point, the Court permitted Johnson to identify what he believed to be the bases of his disagreements with counsel. Following this discussion, the Court stated that the grounds identified by both Jacobs and Johnson did not suggest "that there is any lack of preparation or consideration for the merits of [Johnson's] case." (*Id.* at 15). Rather, the court noted that counsel had "done a good job" educating Johnson on the necessary information and covering all of the witnesses that the Government intended to call. Finding no reason to dismiss counsel from his responsibilities in representing Johnson, the court denied counsel's request to withdraw from the case and the request for adjournment of trial. (*Id.*).

Following a few other housekeeping matters, the court permitted Johnson to address the court regarding his concerns about his counsel. Johnson read a note that he had prepared the previous night regarding additional bases of his disagreements over trial strategy with counsel. Johnson continued to argue to the Court regarding his desire not to have counsel represent him at trial. Following this exchange, the Court stated:

> We−we are here to select a jury. They will be given extensive instructions about the fact that you have no obligation to prove anything, that the burden of proof is allocated to the government to prove all the elements of the crime. [The prosecutor] reviewed the witnesses that she was going to call in detail. The discovery in the case is not particularly complicated and it's been in your and your [counsel's] possession for some period of time.

> I have not heard anything to suggest that he has done anything short of every effort to make sure that you have an understanding of what the evidence is that the Government intends to call. [The prosecutor] has outlined it. And we are ready to go.

3

(*Id.* at 20-21). The Court took a brief recess and then called in the prospective jurors to begin the *voir dire* process. Following *voir dire*, Johnson renewed his request for substitution of counsel, but the district court once again denied his request. (*Id.* at 123).

On September 27, 2013, the government rested its case, the court sent the jury out of the courtroom, and defense counsel requested that the court give Johnson the weekend to decide whether he was going to testify on behalf of his defense. (Doc. 41 at 115). Counsel explained that he had advised Johnson several times not to testify, but that Johnson "would like to testify and explain his situation." (*Id.*). Johnson believed that it would be helpful to him to go through his notes over the weekend and allow counsel to review his statement with him. (*Id.* at 115-16). Johnson believed that his counsel was sincere about not wanting him to give his statement, but Johnson himself was also sincere that he wanted his "side heard." (*Id.* at 117). Upon hearing Johnson's position and request for continuance, the district court noted some of the risks of Johnson testifying, including answering questions posed by the government under oath. (*Id.* at 117-118). The court also noted that Johnson could either choose to testify or choose not to testify, but indicated that they would be moving forward with the case that day. (*See id.* at 120). When the jury returned to the courtroom, defense counsel stated that he would not be calling any witnesses. The court then adjourned for the day. On September 30, 2013, the jury returned a verdict of guilty on all counts. (Doc. 16).

The district court sentenced Johnson to 262 months' imprisonment on February 27, 2014. (Doc. 37 at 4). At Johnson's sentencing, the court referenced the factors identified in 18 U.S.C. § 3553(a). In determining what constituted a reasonable sentence, the court discussed Johnson's criminal history background, education, and his history with substance abuse problems. Johnson appealed this sentence on February 28, 2014.

4

## II.  ANALYSIS

Johnson now appeals his conviction and his sentence based on the following four grounds: (1) the district court abused its discretion in denying Johnson's requests for new counsel; (2) the district court abused its discretion in denying Johnson's request for a break at the conclusion of the government's case to consider whether to take the stand in his own defense; (3) the district court failed to comply with 21 U.S.C. § 851(b) when it imposed an enhanced sentence on Johnson; and (4) Johnson's sentence is unreasonable because it is "greater than necessary" to comply with the purposes of 18 U.S.C. § 3553(a)(2).

### A.  Withdrawal of Counsel

The first ground upon which Johnson challenges his conviction is that the district court abused its discretion in denying his court-appointed attorney's request to withdraw from representation.[1]  Specifically, Johnson submits that the conflict between Johnson and his attorney was "so extensive that the only topic upon which they were allied was that they should not be attorney and client." (App. Doc. 15 at 23-24).

Under the Sixth Amendment, a criminal defendant has the right to have the assistance of counsel for his defense. U.S. Const. amend. VI.  If a defendant does not require court-appointed counsel, "the Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624-25 (1989).  In the case of an indigent defendant, the "right to counsel of *choice*, unlike the *right* to counsel, however, is not absolute." *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990).  Rather, an indigent defendant does not have a right to have

---

[1] Although the request was originally made by Jacobs, Johnson ultimately adopted this request.

a particular attorney represent him, and he must show good cause to warrant a substitution of counsel. *Id.* We review for abuse of discretion a district court's decision regarding the substitution of counsel. *United States v. Vasquez*, 560 F.3d 461, 466 (6th Cir. 2009); *United States v. Mooneyham*, 473 F.3d 280, 291 (6th Cir. 2007).

To determine whether a district court has abused its discretion in denying a motion to substitute counsel, the Court considers several factors. These factors include "the timeliness of the motion; the adequacy of the court's inquiry into the defendant's complaint; and whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense." *Mooneyham*, 473 F.3d at 291 (quoting *United States v. Saldivar–Trujillo*, 380 F.3d 274, 277 (6th Cir. 2004)). The Court also balances the defendant's right to counsel of his choice with the public's right to a "prompt and efficient administration of justice." *Id.* The Court will now address these factors in the context of Johnson's case.

1.     Timeliness.

Whether a motion is timely "depends on the facts and circumstances of that case." *Wilson v. Mintzes*, 761 F.2d 275, 281 (6th Cir. 1985). In evaluating the timeliness of a request to substitute counsel, courts have generally addressed this factor from two different perspectives: the amount of time which passed from the initial appointment of counsel to the request to substitute, and the proximity of the request to the trial date. The reasons militating in favor of consideration from these dual perspectives are logical. A court should consider whether both counsel and a defendant have afforded the attorney-client relationship sufficient time to determine whether the representation can be an effective one. *See United States v. Williams*, 176 F.3d 301, 314 (6th Cir. 1999) (finding that a district judge's refusal to permit new counsel was

6

not an abuse of discretion when "the district court was not satisfied that communication had truly broken down, only that there was some lack of understanding or lack of confidence between [the defendant] and his lawyer"). On the other hand, assuming an adequate amount of time has passed, a substitution on the eve of trial necessitates a continuance and frustrates another judicial concern, the vindication of the public's interest in a speedy trial. *United States v. Whitfield*, 259 F. App'x 830, 834 (6th Cir. 2008) (per curiam) (noting that "when 'the granting of the defendant's request would almost certainly necessitate a last-minute continuance, the trial judge's actions are entitled to extraordinary deference'") (quoting *United States v. Pierce*, 60 F.3d 886, 891 (1st Cir. 1995)).

In the case at bar, Johnson and the government appear to agree that there was little or no delay in the course of proceedings from the commencement of the case, including the appointment of counsel, to its disposition. Counsel was appointed on June 25, 2013, and there were no requests for delays by either party until Johnson's counsel made his first request for permission to withdraw at the final pretrial conference on September 13, 2013 – a matter of 80 days. While Johnson did at one point complain about the number of times his lawyer had visited with him at the jail, the record reflects that Johnson and his attorney had communicated several occasions prior to the final pretrial conference. Under these circumstances, the Court finds that sufficient time had elapsed between the commencement of the attorney-client relationship and the final pretrial conference to afford Johnson and his counsel an adequate opportunity to evaluate the apparent efficacy of the attorney-client relationship. In this sense, then, we conclude that, measured from the perspective of the commencement of the relationship, the request to substitute counsel was timely.

7

Turning to the timeliness of the request from the perspective of the proximity of the trial date, the request takes on a starkly different character. The first time the request to substitute counsel was asserted, at the September 13, 2013, final pretrial conference, was only 12 days before the scheduled trial date of September 25, 2013.[2] At this proceeding, the record before the Court supports the conclusion that Johnson and his counsel had apparently engaged in sufficient communications to have developed fundamental differences of opinion regarding strategy and tactics, including whether it would be advisable for Johnson to enter into a plea agreement with the government or proceed to trial and whether counsel should file certain pretrial motions. Based on the nature of their disagreements, the district court concluded that it had not been presented with a sufficient justification for a substitution of counsel, and denied counsel's request to withdraw.

The Court notes that the district court did not explicitly discuss the timeliness of counsel's request to withdraw at the final pretrial conference other than a passing observation that the trial was 12 days away and that a jury had been summoned. The next time the issue was raised – by both counsel and Johnson – was the day of trial itself, immediately prior to the beginning of jury selection. At that point, defense counsel made a concurrent request to adjourn the trial because he had met with Johnson at the jail two days prior, and Johnson had advised him that he was attempting to retain substitute counsel. Counsel advised the district court that he was compelled to renew his request to withdraw due to what he described as an "impasse" with Johnson over trial strategy and tactics, including how certain witnesses identified by the government should be cross-examined and whether Johnson should take the witness stand in his

---

[2] The transcript of the exchanges between and among the district court, counsel and Johnson reveals some disconnect among the parties as to the precise facts and circumstances which Johnson and his counsel argued to the court in support of the request to withdraw. While defense counsel, citing a "breakdown in communication," asked to withdraw, Johnson at first stated that he did not ask his counsel to withdraw, but later seemed to accede to this request.

8

own defense. The court then engaged in an extended discussion with counsel and Johnson regarding the nature of their disagreements, and found insufficient cause to permit a substitution of counsel. As noted *supra*, this request was once again denied following *voir dire* on the same basis.

Viewing all the facts and circumstances of the timing of the requests for substitution of counsel as a whole, the Court concludes that this factor is, at best, neutral, tending in favor of the propriety of the district court's denial of said request. While a distinction must be made between defense counsel's initial request to withdraw from representation at the final pretrial conference and the renewals of the request on the day of trial, the practical reality is that the district court's grant of any of the requests would have inevitably resulted in a continuance of the trial date. Based on these circumstances, we cannot conclude that this factor supports a conclusion that the district court abused its discretion. Thus, the Court will turn to the remaining factors.

2.      Adequacy of the District Court's Inquiry

With respect to the adequacy of the district court's inquiry into a request to withdraw as counsel, "[t]his Court's prior decisions indicate that, to meet this requirement, the district court simply must allow a defendant the opportunity to explain the attorney-client conflict as he perceives it." *United States v. Marrero*, 651 F.3d 453, 465 (6th Cir. 2011) (citing *Vasquez*, 560 F.3d at 467). As evidenced by the record of both the final pretrial conference and the first day of trial as discussed *infra*, the Court concludes that the district court, on both occasions, afforded Johnson a more than adequate opportunity to explain the bases of his disagreements with counsel over conduct of the case generally and trial strategy in particular. Accordingly, the Court finds that this factor weighs heavily in favor of affirmance of the district court's decision to deny the request for substitution of counsel.

9

3.    Nature of the Conflict Between the Attorney and the Client

Turning to the third factor, the *Marrero* court observed:

[A] defendant's differences of opinions with his attorney do not create a complete breakdown of communication that compromises his defense.  This Court has previously emphasized that a defendant's "dissatisfaction with the responses he got from his lawyer, not with the lack of opportunity or his inability to talk with his lawyer or contact his lawyer," does not establish a total lack of communication.

651 F. 3d at 466 (citing and quoting *Saldivar-Trujllo*, 380 F.3d at 278).

In this case, the record reveals that, while Johnson did voice one complaint about the frequency of visits by his counsel, by the time of trial the communications between attorney and client had been sufficiently comprehensive that serious disagreements had developed regarding case strategy and trial tactics. Such disagreements, far from suggesting that Johnson had inadequate contact and communication with his court-appointed counsel prior to trial, instead suggest that such contacts and communications had been so extensive so as to evolve into fundamental disagreements between attorney and client.  While perhaps unfortunate and regrettable, such disagreements do not rise to the level of "a total lack of communications preventing an adequate defense."  *United States v. Jennings*, 83 F. 3d 145, 148 (6th Cir. 1996) (citation omitted).  Accordingly, this factor weights in favor of affirmance of the district court's decision to deny the request for substitution of counsel.

4.    Prompt and Efficient Administration of Justice

Finally, the Court considers whether the district court's denial of counsel's request for substitution of counsel appropriately balanced the defendant's right to his choice of counsel with the public's right to the prompt and efficient administration of justice.  *See Marrero*, 651 F.3d at 467.  Both the defendant's and the public's right to prompt and efficient justice are embodied in the Speedy Trial Act, 18 U.S.C. § 3161, *et seq.*, which requires that a defendant's trial

10

commence within seventy days after the date on which the indictment was filed or the date the defendant appeared before a judicial officer of the court in which the charge is pending.

While it is true that on the day of trial, Johnson expressed his willingness to waive his speedy trial rights in the interest of substituting his counsel, it is also axiomatic that both a criminal defendant *and* the public have an interest in a speedy trial. *See*, *e.g., Zedner v. United States*, 547 U.S. 489, 500-501 (2006) ("The purposes of the [Speedy Trial] Act also cut against exclusion on the grounds of mere consent or waiver. If the Act were designed solely to protect a defendant's right to a speedy trial, it would make sense to allow a defendant to waive the application of the Act. But the Act was designed with the public interest firmly in mind."); s*ee United States v. Taylor*, 489 F. App'x 34, 49 (6th Cir. 2012) (recognizing that a district court may grant a trial continuance and exclude the delay from Speedy Trial Act scrutiny only upon a finding "that the ends of justice served by granting the continuance outweigh the *public's* and defendant's interests in a speedy trial.") (quoting *Zedner*, 547 U.S. at 498-99) (emphasis added). Thus, although Johnson may have been willing to waive his speedy trial rights, the district court was also required to consider the public's right to the efficient administration of justice.

As noted previously, had the district court granted counsel's request to withdraw, even when first made at the final pretrial conference, it would have inevitably necessitated a continuance of the trial. By that time, both the government and Johnson's court-appointed counsel had invested substantial time and effort to prepare the case for trial. Despite Johnson's disagreements with his lawyer's advice and approach to the case, there is nothing in the record that suggests either Johnson or his lawyer were unprepared to go forward with the trial. Rather, they simply disagreed about precisely how it should be conducted. Under these circumstances,

11

the Court concludes that this factor weighs in favor of affirmance of the district court's denial of the request to substitute counsel.

Having now considered all of the relevant factors, the Court concludes that, to varying degrees, all weigh in favor of the district court's denial of Johnson's counsel's request to withdraw from representation. Accordingly, despite the language used by Johnson and his lawyer, nothing in the record suggests such a complete breakdown in communication so as to deprive Johnson of effective assistance of counsel. Rather, Johnson simply disagreed with his lawyer's advice. Under these circumstances, the district court's denial of counsel's request to withdraw from representation did not violate Johnson's Sixth Amendment right to counsel and does not constitute an abuse of discretion.

## B. Denial of Trial Recess

Johnson next asserts that the district court abused its discretion by denying his request for a recess or adjournment of the trial following the conclusion of the government's case. Johnson submits that a recess would have afforded him time to consider whether he would take the witness stand in his own defense.

This Court has granted district courts wide discretion when determining whether a district court's denial of a criminal defendant's request for a trial continuance constitutes an abuse of discretion. *United States v. Lewis*, 605 F.3d 395, 401 (6th Cir. 2010). A district court's denial of a continuance is typically considered an abuse of discretion only when it has made its ruling based on "an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." *Vasquez*, 560 F.3d at 466 (quoting *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983)). Further, in order for the district court's ruling to warrant reversal, a defendant must show that the denial of the continuance caused him actual prejudice in the defense of his

case. To show actual prejudice, the defendant must establish that the continuance "would have made relevant witnesses available or added something to the defense." *United States v. King*, 127 F.3d 483, 487 (6th Cir. 1997).

Perhaps the primary reason that appellate courts accord trial courts such broad discretion with these decisions is the recognition that the trial court judge has the best perspective to make judgments about how a trial should proceed, based on his or her personal involvement in the broader context of the proceedings themselves. So it is in this case. The district judge had already been involved with the parties regarding the nature of the disputes between defense counsel and Johnson, including disputes as to whether it was advisable for Johnson to take the witness stand in his own defense. While the district court did not explicitly state his reasons for denying the continuance, the record is clear that he gave the defendant an opportunity to state his position and decided to deny the continuance based on the posture of the trial. *See* Doc. 41 at 120 (having a dialogue with the defendant regarding his right to testify and concluding that defendant should be ready to make a determination after several days of trial and numerous meetings with his attorney). Accordingly, we find an appropriate deference to the trial court's judgment in this regard requires us to reach a conclusion that the district court did not abuse its discretion in denying Johnson's request for an over-the-weekend trial continuance.[3]

## C. **Failure to Comply with Sentence Enhancement Procedure**

Johnson next asserts that the district court failed to comply with the procedure required by 21 U.S.C. § 851(b), yet imposed an enhanced sentence upon him. In his brief, Johnson recognizes that this Circuit has held that violations of "the statute have been held harmless error

---

[3] Even if we were to question whether the district court was entitled to deference in these circumstances, Johnson has failed to show how his testimony would have "added something to [his] defense," meaning that any error by the district court in this regard would be harmless. However, based on the record before the Court, the Court would only be able to make such a determination based on speculation, which it is unwilling to do.

13

in instances where the prior convictions occurred more than five years prior to the filing of the information, and were thus prohibited from collateral attack per 21 U.S.C. § 851(e)." (App. Doc. 15 at 40).

The United States attorney must file a notice identifying prior drug-related convictions of the defendant before trial or entry of a guilty plea in order to seek an enhanced sentence under 21 U.S.C. § 851(b). *United States v. Roberts*, 529 F. App'x 488, 492 (6th Cir. 2013). Pursuant to 21 U.S.C. § 851(b), such an enhanced sentence may be imposed only if, prior to the imposition of sentence, the sentencing judge inquires of the defendant whether he or she affirms or denies the prior convictions and warns the defendant that failure to challenge the conviction prior to imposition of sentence forecloses a later challenge. *United States v. Williams*, 899 F.2d 1526, 1529 (6th Cir. 1990). In the case of a defendant whose prior convictions occurred five years before the information was filed, 21 U.S.C. § 851(e) prohibits collateral attack of those convictions. *United States v. Hill*, 142 F.3d 305, 313 (6th Cir. 1998). A district court's failure to conduct this inquiry is examined under a harmless error standard. *Id.*

In this case, it is undisputed that the district judge did not engage with Johnson in the colloquy mandated by 21 U.S.C. § 851 and that Johnson received a sentence of 262 months rather than the maximum statutory penalty of 30 years pursuant to this enhancement scheme. 21 U.S.C. § 841(b)(1)(c). It is also undisputed that the convictions noticed by the government and ultimately used by the court to enhance Johnson's sentence occurred more than five years before the government filed its notice of its intent to enhance Johnson's sentence in the instant case. Based on these undisputed facts, Johnson's collateral attack of the use of his prior

14

convictions is barred under 21 U.S.C. § 851(e). Thus, Johnson's challenge to the enhancement of his sentence must fail.[4]

### D. <u>Unreasonableness of the Sentence Imposed</u>

Finally, Johnson asserts that the sentence imposed upon him was substantively unreasonable because it was greater than necessary to achieve the purposes of criminal sentencing, as set forth in 18 U.S.C. § 3553(a). In support of his position, Johnson cites the "national trend towards shorter sentence for federal drug offenses" as well as the district court's intent to sentence Johnson at the bottom of his guidelines range. (App. Doc. 15 at 47).

Under 18 U.S.C. § 3553(a), the district court is required to consider certain factors in imposing a sentence that is sufficient but not greater than necessary to comply with the purposes of 18 U.S.C. § 3553(a). "Sentences must be both procedurally and substantively reasonable." *United States v. Pirosko*, No. 14-3402, 2015 WL 2402121, at *11 (6th Cir. May 21, 2015) (quoting *United States v. Kamper*, 748 F.3d 728, 739 (6th Cir. 2014)). We review a district court's sentence for substantive reasonableness under an abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 56 (2007). A sentence may be considered "substantively unreasonable if the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent [18 U.S.C.] § 3553(a) factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Darji*, No. 13-3240/3525, 2015 WL 3372729, at *7 (6th Cir. May 26, 2015) (quoting *United States v. Robinson*, 503 F.3d 522, 528 (6th Cir. 2007)). A sentence imposed within a properly-calculated

---

[4] Although Johnson asks the Court to review and expand our precedent subjecting 21 U.S.C § 851(b) errors to harmless error review, this panel "may not overrule decisions issued by other panels." *United States v. Young*, 496 F. App'x 570, 579 (6th Cir. 2012). Thus, we cannot reach this issue.

advisory guidelines range carries with it a rebuttable presumption of reasonableness. *Rita v. United States*, 551 U.S. 338, 347 (2007).

At Johnson's sentencing, the district court appropriately considered and referenced the 18 U.S.C. § 3553(a) factors, including Johnson's history and the need for the sentence imposed, in explaining the basis for its sentence. *See* Doc. 37 at 33 ("Important to the sentence at this juncture is the fact that the continued and repeat criminal behavior involvement in a significant amount of the offenses, obviously, dictate a significant sentence in the case."). Although Johnson submits that the district court should have imposed a lower sentence on account of Johnson's background and his work with the Drug Enforcement Agency, it remains undisputed that the district court was aware of these facts, but, given Johnson's classification as a "career offender" pursuant to U.S. Sentencing Guidelines § 4B1.1, sentenced him to the bottom of his properly-calculated guideline range at 262 months. *See United States v. Easting*, No. 14-5557, 2015 WL 2056962, at *2 (6th Cir. May 5, 2015) (per curiam) (concluding that the defendant's "wish that the district court had balanced these factors differently and imposed a below-guidelines sentence, without more, [was] insufficient to justify [] disturbing the reasoned judgment of the district court"). While Johnson may disagree with the district court's analysis of the 18 U.S.C. § 3553(a) factors, his disagreement does not establish an abuse of discretion on the part of the district court. As Johnson is unable to establish that his position amounts to anything more than disagreement with the district court's sentence, we conclude that the district court did not abuse its discretion by imposing a sentence of 262 months' imprisonment.

## III. <u>CONCLUSION</u>

For the foregoing reasons, we affirm Johnson's conviction and sentence.