**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Troy PITTMAN, Defendant–Appellant.**

**No. 99–6090.**

United States Court of Appeals,
Sixth Circuit.

May 29, 2001.

Before KENNEDY and DAUGHTREY; Circuit Judges, and McKEAGUE, District Judge.[*]

KENNEDY, Circuit Judge.

Defendant Troy Pittman appeals his convictions for armed bank robbery, use of a firearm in commission of a bank robbery, felon in possession of a firearm, and forcing another to accompany him during the commission of a robbery. On appeal Pittman argues (1) the district court failed to properly instruct the jury to consider the evidence related to each charge separately, (2) the evidence presented was insufficient to convict him of one of the robberies, and (3) the district court should have granted his counsel's motion to withdraw and appointed him new counsel.

For the reasons stated below, we affirm.

I.

Pittman was indicted in relation to two armed bank robberies and one alleged attempted robbery. The indictment charged that Pittman robbed the East Main Street branch of Fifth Third Bank, the Allen Road branch of Great Financial Federal Bank, and attempted to rob the New Cir-

cle Road branch of Central Bank and Trust Company all in Lexington, Kentucky. See J.A. at 20–25.

Pittman began his adventure on September 3, 1997, robbing the Fifth Third Bank branch. He entered the bank and told everyone to lie face down on the ground. After forcing a bank teller to give him money, he fled the bank taking a bank customer, Lezelle Lowe, as a hostage. Pittman forced Lowe to drive him, in Lowe's car, to Hanover Street where he told Lowe to get out of the car. Once Lowe was out of the car, Pittman drove away.

Pittman struck again on October 11, 1997, robbing the Allen Road branch of Great Financial Federal Bank. Again he ordered everyone in the bank to lie face down on the floor and the teller to fill his bag with money. Pittman's efforts this time were foiled however because the teller was able to slip a dye-pack into the bag. After Pittman had left the bank, the pack exploded, staining the money with red dye. The bank's surveillance camera recorded the robbery.

Perhaps seeking more money, Pittman made a trip to the New Circle Road branch of Central Bank on October 13, 1997. According to the testimony of Central Bank's manager at the time, David Denson, Pittman walked up to the bank's front door with both hands in his pockets. When Pittman reached the door, he pulled one hand out of his pocket, on which he was wearing a surgical glove, and attempted to open the door. See J.A. 300–03. Suspicious of the manner in which Pittman approached, Denson warned the bank's employees to take cover and called the police. Realizing the door was locked— the bank had closed thirty-five minutes

[*] The Honorable David W. McKeague, United States District Judge for the Western District of Michigan, sitting by designation.

prior to his arrival—Pittman retreated, walking past the drive-through window of the bank. *See* J.A. at 305. Although they had been told by Denson to take cover, employees Scott Collins and Sheila Wynn watched Pittman through the teller window as he retreated. *See* J.A. 303, 330, 348.

Pittman then left the area in a maroon van. In his angst to leave the scene, Pittman ran a stop sign. Observing the traffic violation, police officer Byron Smoot attempted to stop Pittman. Pittman wanted no part of that and attempted to escape. During the ensuing chase, Pittman lost control of the van and attempted to escape on foot. While fleeing on foot, Pittman discarded the pistol he had been carrying. No quicker of foot than of wit, Pittman was apprehended. Officer Smoot then retrieved the pistol Pittman had discarded. The police officers' subsequent search of the van produced a key to a Day's Inn motel room. When the officers searched the room, they found (1) a cut out from the *Lexington Herald–Leader's* story on the Great Financial Bank robbery and (2) a handwritten note saying, "This is a stick-up. Put all the money in a bag."

Prior to trial, Pittman's attorney moved to withdraw from the case on the grounds that he and Pittman had irreconcilable differences. *See* J.A. 68–70. The court granted the request and also granted Pittman's motion for a psychiatric examination to determine whether he was competent to stand trial. After determining he was, the court appointed new counsel, Andrew Stephens, and set a new trial date. Three weeks before trial, Stephens moved for leave to withdraw. *See* J.A. 75–78. In his motion, Stephens stated Pittman was not happy with his performance and that Pittman believed he was a racist. According to the motion, Pittman also believed the court was racist. Pittman also wrote the court a letter alleging that Stephens was

racist and was not willing to work with him. *See* J.A. 531. At a hearing on the matter, however, when asked why counsel's performance was unsatisfactory, Pittman failed to identify any specific reasons, stating simply that Stephens was not "working in the best interest for me as a black man." J.A. 536. There was no indication that his counsel was racist. The court denied this motion on the grounds that it was close to trial and the case was fairly complicated. Moreover, the court held that there was no indication counsel would not do an effective job and the type of dispute Pittman was having with his present counsel, like the dispute he had with his former counsel, was such as he would likely have with any counsel. The case therefore proceeded to trial.

At trial, the prosecution's evidence identifying Pittman as the robber of the Fifth Third Bank branch was strong—or at least strong enough that Pittman does not challenge his conviction on that count in this appeal. Employees and customers were fairly certain that Pittman was the man. The witnesses from Great Financial Bank, however, were not nearly as certain that Pittman was the man who robbed that bank. Lynda Norman, a bank teller at Great Financial at the time of the robbery, said Pittman looked similar to the bank robber. She also testified she had earlier identified a photograph of Pittman out of a photo lineup as looking similar to the robber; however, she told the police officer showing her the photographs that she was not certain. *See* J.A. at 252–55. Amy Grigsby, also a bank teller at Great Financial, testified that Pittman looked similar to the man who robbed the bank; however, she admitted she could not say Pittman was the robber. She also testified that prior to trial she was unable to identify Pittman as the bank robber when shown a photo lineup. *See* J.A. at 265–70. Despite their difficulty in identifying the robber,

several of the employees at Great Financial were able to identify the gun Pittman was carrying when apprehended after the Central Bank incident as similar in size and color to the one used during the Great Financial Bank robbery. *See* J.A. 250–55, 265–70.

While the Great Financial Bank employees were not certain in identifying Pittman, the photographs and videotape taken by the surveillance camera from the robbery were of great help. Several Central Bank employees present at the time Pittman approached that bank were able to identify Pittman as the individual in Great Financial Bank's surveillance photographs and on the surveillance tape. Specifically, David Denson, Scott Collins, and Sheila Wynn, all identified the person on the surveillance tape and in the surveillance photographs from the Allen Road Branch as Pittman. *See* J.A. at 301–02; 312–13; 337; 357. These witnesses also testified that Pittman was the man who approached the Central Bank branch on October 13. In addition to this evidence, there was also circumstantial evidence discovered in the search of the motel room to which he had a key.

At the close of the government's case, Pittman's counsel moved for acquittal on all charges. The district court granted the motion as to the charge of carrying a firearm during the charged attempted robbery of the Central Bank branch but denied it as to the other charges. *See* J.A. at 453. The case was submitted to the jury which found Pittman guilty of the two counts of armed bank robbery, two counts of use of a firearm in commission of a bank robbery, two counts of felon in possession of a firearm, and one count of forcing another to accompany him during a bank robbery. He was acquitted of the charges relating to the Central Bank incident.

Pittman now appeals his conviction on the charges relating to the Great Financial Bank robbery and the district court's decision denying his counsel's motion to withdraw.

## II.

On appeal, Pittman raises three arguments. First, he argues the district court's instruction to the jury that it consider the evidence for each crime separately was unclear. Second, he argues the evidence was insufficient to convict him on the counts related to the Great Financial Bank robbery. Third, he argues the district court should have granted his counsel's request to withdraw and appointed him new counsel. The court's failure to do so, he contends, resulted in him having ineffective counsel.

## A.

The court instructed the jury as follows: The defendant has been charged with eight crimes. The number of charges is no evidence of guilt, and this should not influence your decision in any way. It is your duty to separately consider the evidence that relates to each charge and to return a separate verdict for each one. For each charge, you must decide whether the government has presented proof beyond a reasonable doubt that the defendant is guilty of that particular charge. Your decision on one charge ... should not influence your decision on any of the other charges.

J.A. at 508.

Pittman did not object to this instruction so we review only for plain error. *See* Fed.R.Crim.P. 52(b). "Plain error is defined as an egregious error, one that directly leads to a miscarriage of justice." *United States v. Krimsky*, 230 F.3d 855, 858 (6th Cir.2000) (quoting *United States v. Busacca*, 863 F.2d 433, 435 (6th Cir. 1988)). Pittman does not suggest how this

instruction was incorrect; rather, he claims it should have been clearer. The instruction, however, seems perfectly clear: the jury was to consider the evidence related to each charge separately. Accordingly, we find no plain error.[1]

### B.

■ We likewise find no merit in Pittman's argument that no reasonable jury could have found beyond a reasonable doubt that Pittman was guilty of the Great Financial Bank robbery based on the evidence presented. We will reverse a conviction for insufficient evidence only if, viewing the evidence in the light most favorable to the prosecution, we determine that no rational trier of fact could have found beyond a reasonable doubt that the defendant committed the essential elements of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In making its case, the government is entitled to rely on circumstantial evidence, which by itself may be sufficient to sustain a conviction. *See United States v. Stone*, 748 F.2d 361, 362 (6th Cir.1984).

Pittman argues that no one from Great Financial Bank identified him as the robber. Instead, he notes, two employees merely said he looked similar to the robber. The government counters that Pittman is not telling the whole story. To support the Great Financial Bank conviction, it cites the testimony of the Central

Bank employees identifying Pittman as the robber on the surveillance tape and in the surveillance photographs from the Great Financial Bank robbery. It also points to the testimony of several witnesses from Great Financial Bank saying the gun Pittman discarded looks similar to the one used by the robber of Great Financial. Finally, it relies on the circumstantial evidence obtained from the search of the motel room for which he had a key.

We need not decide whether the testimony of the Great Financial Bank employees, would be sufficient. The testimony of the Central Bank employees, identifying Pittman as the robber in the photographs and on the videotape from Great Financial, buttresses their identification. Because these witnesses were quite certain Pittman was the man in the surveillance photographs and on the videotape, we believe that a reasonable jury could have found beyond a reasonable doubt it was Pittman who robbed the Allen Road branch of Great Financial Bank. *See Jackson v. Virginia*, 443 U.S. at 319, 99 S.Ct. 2781. The additional evidence of the demand note and the newspaper article, moreover, provides additional support for the jury's verdict.

### C.

Pittman appears to make two arguments regarding the district court's decision to deny his counsel's motion to withdraw: (1)

---

1. Pittman stretches this argument further by stating the jury should not have been able to consider the Central Bank employees' testimony identifying Pittman as the individual on the surveillance tape and in the photographs from Great Financial Bank. This argument has no merit. Pittman points to no authority to support his position. Nor are we able to find any. To be clear, the prosecution did not use the testimony of the Central Bank employees to suggest to the jury that because Pittman attempted to rob Central Bank, it was likely he was also the one who robbed Great Finan-

cial—such an argument was not likely to work as there was little evidence to support the attempted robbery charge—but rather to identify Pittman as the one on Great Financial's surveillance tapes and in the photographs. The prosecution is entitled to introduce witnesses to identify the defendant. The use of the Central Bank employees is no different than bringing in one of Mr. Pittman's relatives, who would know Pittman's aspect better than the Great Financial Bank employees, to identify him.

that the court should have allowed his counsel to withdraw because he had little intention of working with this counsel and while counsel did consult with him, "a better working relationship between the two could have made the defense presented more effective." Appellant's Br. at 29; and (2) because the working relationship could have been better, his counsel was ineffective. The government responds (1) that there is no evidence that Pittman's counsel was ineffective and (2) if Pittman is arguing that his motion for new counsel should have been granted, the district court properly determined that counsel was able to effectively represent Pittman.

Pittman's ineffective assistance of counsel argument is unpersuasive. Under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), he must begin by showing that his counsel's performance was deficient. An attorney's performance is deficient if he "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 104 S.Ct. 2052. Pittman points to no specific errors. He charges that witnesses should have been cross-examined more thoroughly, but he does not suggest with what type of questions. He charges that counsel should have objected more, but he does not identify to what. Our review of the record does not reveal any errors so serious as to render counsel's performance constitutionally deficient.

■ Pittman's argument that the district court should have granted his motion for new counsel fares no better. We review such decisions for abuse of discretion. *See United States v. Jennings*, 83 F.3d 145, 148 (6th Cir.1996). In reviewing the district court's decision to deny the motion, we consider "the timeliness of the motion; the adequacy of the court's inquiry into the defendant's complaint; and whether the conflict between the attorney and client

was so great that it resulted in a total lack of communication preventing an adequate defense. Further, consideration of such motions requires a balancing of the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice." *Id.* at 148 (quoting *United States v. Iles*, 906 F.2d 1122, 1130 n. 8 (6th Cir.1990).

Evaluating these factors, we see no abuse of discretion. Pittman's motion was made three weeks before trial. Despite this, the district court considered the motion timely. The district court made a thorough inquiry into the matter—considering the complexity of the case, the type of complaints Pittman was making, the similarity of these complaints to previous complaints concerning his first attorney and the psychologist that evaluated him, and the amount of work done by Pittman's attorney. The court found that while there was some breakdown in the relationship, it was insufficient to prevent counsel from providing an adequate defense. Pittman does not challenge this finding—or for that matter, any finding. Moreover, the court found that the dispute Pittman was having with his counsel was such as he would likely have had with any counsel. Hence, he had little legitimate interest in obtaining new counsel. The district court also determined that given the previous delays, the public's interest in the prompt administration of justice outweighed Pittman's interest in obtaining new counsel. We think there was a sufficient factual basis for this finding. Pittman had already had one counsel dismissed for similar reasons. He had also alleged that the psychologist conducting his examination was a racist. *See* J.A. at 83. These objections and allegations support a conclusion that Pittman was likely to object no matter who his counsel was. As noted, there is no evidence that counsel's performance was

insufficient. Therefore, we find no abuse of discretion.

### III.

For the foregoing reasons, we affirm Pittman's conviction.