NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0598n.06

No. 18-5087

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Dec 06, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| RONRICUS CHAPMAN, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE: BOGGS, GIBBONS, and BUSH, Circuit Judges.

GIBBONS, Circuit Judge. Ronricus Chapman alleges that the district court abused its discretion in denying his request to substitute counsel. The Sixth Amendment guarantees criminal defendants the absolute right to counsel. *See Kansas v. Ventris,* 556 U.S. 586, 590 (2009). "The right to counsel of *choice,* unlike the *right* to counsel, however, is not absolute." *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990). Therefore, an indigent defendant must show "good cause" to warrant substitution of counsel. *Id.* at 1130–31.

Whether a defendant has shown "good cause," such that a district court abuses its discretion in denying a request for substitute counsel, generally depends upon four factors: (1) the timeliness of the motion; (2) the adequacy of the district court's inquiry into the matter; (3) the extent of the conflict between the party and the attorney and whether the conflict between the two was so great that it resulted in a total lack of communication, preventing an adequate defense; and (4) the

balancing of these three factors with the public's interest in the prompt and efficient administration of justice. *United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001).

Here, the timeliness of Chapman's request for substitute counsel and the consideration of the public's interest are both neutral factors in the consideration of Chapman's request. However, the adequacy of the district court's inquiry into Chapman's complaints and the nature of the conflict between Chapman and his counsel tip the scale toward the conclusion that the district court did not abuse its discretion in denying Chapman's request. Because Chapman did not demonstrate good cause to warrant substitution of counsel, we affirm the district court's denial of his request to substitute counsel.

I.

On January 17, 2017, a federal grand jury returned an indictment charging Ronricus Chapman with drug offenses on nine counts. On January 19, 2017, the district court appointed Jennifer Free to represent Chapman. On August 14, 2017, the court held a change-of-plea hearing in which Chapman pled guilty to count one of the indictment—conspiracy to distribute and to possess fifty grams or more of actual methamphetamine. The court found Chapman competent, accepted his guilty plea, and set sentencing for November 27, 2017.

The Probation Office submitted the draft Presentence Investigation Report ("PSR") on October 23, 2017 and the final PSR on November 20, 2017. On November 22, 2017, the government requested a continuance and the district court reset the hearing to January 2, 2018. Chapman did not receive the PSR until November 26, 2017.

On December 8, 2018, Chapman sent a handwritten letter to the district court requesting a new lawyer.[1]  In addition to specific issues with the PSR, he felt that Free was generally unresponsive and did not visit him frequently enough.  He also expressed concern that there had been no motion for discovery, that the Obion County jail—in which he was being held—did not have a law library or other legal resources, that his sentencing hearing was postponed, and that Free had not worked out "a better plea deal."  DE 235, Sealed Letter, Page ID 485–86.

The government filed a notice of no objection to the PSR on December 29, 2017.  On January 2, 2018—the day of the sentencing hearing—Free filed a notice of no objection to the PSR.  Although the notice included the correct case caption and used Chapman's name throughout the body of the notice, it was entitled "POSITION OF DEFENDANT BRANDON LOVE AS TO PRESENTENCE INVESTIGATION REPORT."  DE 246, Chapman Position, Page ID 560.

At the beginning of the sentencing hearing, Free asked the district court to address Chapman's letter but indicated she had "not had the chance" to discuss it with Chapman.  DE 291, Sentencing Hearing Tr., Page ID 850.  The district court noted that it had read the letter and called for a recess for Free to speak with Chapman.  "Depending on the outcome of that [conversation]," the district court explained, "we will either proceed with sentencing or decide how we need to handle it."  *Id.* at 851.  The district court also re-read the letter during the recess.

After the recess, the district court asked Chapman about his reasons for requesting a new attorney.  Chapman explained his concerns, which the court summarized as: "being housed at Obion County, the fact that sentencing was delayed, and your feelings now that maybe entering the guilty plea was not the best course for you."  *Id.* at 858.  The court concluded that "none of that

---

[1] The letter was filed under seal in the district court.  Because consideration of the letter is necessary to resolve Chapman's appeal and there is no need to protect confidentiality of the letter at this time, we direct that the letter be unsealed.

at this point rises to the level for me to really conclude that you need a different attorney. I just don't see anything that would make me believe that Ms. Free is not doing her job the way she's supposed to." *Id.* at 858–59.

Free then addressed the court. As to the discovery, she explained that she had met with Chapman on "multiple occasions" to discuss "parts of the discovery," spending at least two hours with him at one of those meetings. However, she claimed "it [was] difficult" to discuss much with him because a significant portion of discovery was under a protective order prohibiting defense counsel from sharing it with defendants. *Id.* at 859–60.

As to the PSR, Free explained that Chapman did not receive the PSR until November 26, 2017 because she "missed the email" about the PSR. *Id.* at 860. However, she then mailed the PSR to Chapman but "[h]e did not receive it." *Id.* On November 26, Free brought a copy of the PSR to Chapman. According to Free, she "went through the presentence report page by page" with Chapman during their November 26 meeting, but Chapman did not express any objections to the PSR at that point. *Id.* Because "Chapman seem[ed] to indicate that he did have some objections to the presentence report" in his letter, the district court asked Free to conference with Chapman off-the-record regarding his objections. *Id.* at 861–62.

After the attorney-client conference, Free explained:

> Your Honor, the objections that he had were as to Page 13 and Page 14, Page 15. It was simple possession of cocaine, a theft, ultimately a simple possession of Schedule III. He was attributed two points on each of those.
> And I explained to him the conviction date was 10 years, was 10 years prior to this offense occurring. However, he was revoked to [serve] those sentences, so that's why the points do count in that regard. And I explained that to him. And those were his objections, the additional objections.

*Id.* at 863.

The district court acknowledged Free's explanation and then proceeded with sentencing Chapman. The guideline range for Chapman was 188 to 235 months' incarceration. The court sentenced Chapman to 188 months of incarceration and five years of supervised release. Chapman filed a timely notice of appeal.

II.

Criminal defendants are guaranteed the absolute right to counsel under the Sixth Amendment. *See Ventris,* 556 U.S. at 590. But the right to counsel of choice is not absolute. *Iles*, 906 F.2d at 1130. An indigent defendant must show "good cause" to warrant substitution of counsel. *Id.* at 1130–31.

On appeal, we "review for abuse of discretion the district court's decision that an indigent defendant failed to demonstrate good cause for substitute counsel." *United States v. Marrero*, 651 F.3d 453, 464 (6th Cir. 2011) (citing *United States v. Mooneyham,* 473 F.3d 280, 291 (6th Cir. 2007)). Whether a defendant has shown "good cause," such that a district court abuses its discretion in denying a request for substitute counsel, generally depends upon four factors: (1) the timeliness of the motion; (2) the adequacy of the district court's inquiry into the matter; (3) the extent of the conflict between the party and the attorney and whether the conflict between the two was so great that it resulted in a total lack of communication, preventing an adequate defense; and (4) the balancing of these three factors with the public's interest in the prompt and efficient administration of justice. *Mack*, 258 F.3d at 556.

A.

First, considering the timeliness of the motion, the parties dispute which date—the August 4, 2017 change-of-plea hearing or the November 26, 2017 meeting between Free and Chapman—should trigger the analysis of whether Chapman's request for new counsel was timely. The record

does not clearly indicate which date should guide our analysis on appeal. If we look to August, the motion was untimely. But if we look to November, the timing of the motion would be at least a neutral factor, if not timely. In short, the timing of Chapman's request for a new attorney does not lend strong support to the district court's decision or Chapman's argument. Accordingly, we conclude that timeliness is a neutral factor in the analysis of whether the district court abused its discretion in denying Chapman's request.

On the one hand, Chapman told the district court at the sentencing hearing that he was "not on the same page" as his counsel "from the beginning" of the guilty-plea process—a statement indicating that he was displeased with counsel as early as the August 4, 2017 change-of-plea hearing. DE 291, Sentencing Hearing Tr., at 856. In the government's view, Chapman's filing was untimely because he waited approximately four months after the change-of-plea hearing and less than a month before the sentencing hearing to file his request. The government is correct that we have previously found motions for new counsel untimely when the defendant claims to have been unhappy with counsel all along but waits to file. *See United States v. Jackson*, 662 F. App'x 416, 423 (6th Cir. 2016) (finding defendant's request for substitute counsel, made on the first day of trial, untimely when defendant filed a disciplinary complaint against attorney a week before trial and told the district court he had been unhappy with counsel "from the start"); *United States v. Whitfield*, 259 F. App'x 830, 834 (6th Cir. 2008) (finding the timeliness of the motion weighed against defendant when he made the request "late in the proceedings" even though "he had several chances to raise the issue" earlier). The government is also correct that the Sixth Circuit has previously found motions made for the first time at a sentencing hearing untimely, *United States v. Nelson*, 238 F. App'x 65, 73 (6th Cir. 2007), as well as one made approximately six weeks

before a sentencing hearing and four months after a guilty plea, *United States v. Striebel*, 93 F. App'x 771, 772–73 (6th Cir. 2004).

On the other hand, Chapman's letter and statements at the sentencing hearing also indicate that he was initially motivated to substitute counsel following the November 26 meeting, at which he and Free first reviewed the PSR. In his letter, Chapman explained that even though "[Free] had [the PSR] since 10-23-17[,] she didn't mail it to me[,]" so he did not see the PSR until November 26. DE 235, Sealed Letter, Page ID 485. He stated that he had left Free numerous "messages about [his] PS[R]" and objections[2] he had to it but had received "no response." *Id.* at 486. At the sentencing hearing, Chapman expressed similar concerns focused on the period from November 26 onward:

> I only just got my PS[R] November 26th. I was scheduled for sentencing November 27th. I wasn't able to, didn't have enough time to announce my objections in my PS[R], the ones that I object for.
>
> I never—sent messages for Ms. Free. I haven't been able to, no response, I haven't been able to get in contact with her.

DE 291, Sentencing Hearing Tr., Page ID 852.

Looking to the November 26 meeting as the triggering date, Chapman filed his request only eleven days after he saw the PSR and approximately one month before the sentencing hearing. As Chapman notes, the Sixth Circuit has determined that a request for substitute counsel made a month before trial was timely. *United States v. Powell*, 847 F.3d 760, 780 (6th Cir.), *cert. denied*, 138 S. Ct. 143 (2017). Additionally, the district court did not express any concerns about the timeliness of Chapman's motion, a consideration that has weighed in favor of finding a request timely. *See Marrero*, 651 F.3d at 465 (finding timeliness a neutral factor in part because the district court did not express concern about timeliness when considering defendant's motion).

---

[2] He calls these objections "misprints." DE 235, Sealed Letter, Page ID 486.

Furthermore, Chapman's request for substitute counsel—made in letter form and repeated at sentencing—does not seem to have been made simply as a last-ditch effort to stall the proceedings. *Cf. Whitfield*, 259 F. App'x at 834 (determining it was not unreasonable for district court to conclude defendant was simply trying to delay trial when defendant first informed district court of his dissatisfaction with attorney only minutes before trial, jury was already seated, and defendant's own counsel implied defendant was trying to stall).

Accordingly, timeliness does not weigh strongly in either Chapman's or the government's favor. When timeliness is a neutral factor, we must look to the remaining factors. *See United States v. Saldivar-Trujillo*, 380 F.3d 274, 278 (6th Cir. 2004) (finding that the district court did not abuse its discretion when the defendant's request for substitute counsel was timely, but the remaining three factors weighed against granting defendant's request.)

B.

The second factor in the analysis of whether the district court abused its discretion is the adequacy of the district court's inquiry into defendant's complaint. *Mack*, 258 F.3d at 556. The purpose of the inquiry is to give the defendant a chance to establish "good cause" for the substitution of counsel. *Whitfield,* 259 F. App'x at 834 (citing *United States v. Jennings*, 945 F.2d 129, 132 (6th Cir. 1991)). The inquiry further eases "the defendant's distrust" and preserves "the integrity of the trial process." *Iles*, 906 F.2d at 1131.

"It is hornbook law that '[w]hen an indigent defendant makes a timely and good faith motion requesting that appointed counsel be discharged and new counsel appointed, the trial court clearly has a responsibility to determine the reasons for defendant's dissatisfaction with his current counsel.'" *Id.* at 1130 (alteration in original) (quoting 3 Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 11.4(b) (4th ed. 1984)). The district court's inquiry is adequate when

8

it allows "all of the interested parties to present their respective evidence and arguments." *Saldivar–Trujillo,* 380 F.3d at 278. "[T]o meet this requirement, the district court simply must allow a defendant the opportunity to explain the attorney-client conflict as he perceives it." *Marrero*, 651 F.3d at 465 (citing *United States v. Vasquez*, 560 F.3d 461, 467 (6th Cir. 2009)). The district court should also engage the defendant's attorney in its inquiry. *See Vasquez,* 560 F.3d at 467 ("The record demonstrates that the district court engaged in multiple lengthy discussions with both [the defendant] and [his attorney] . . . ."); *Saldivar–Trujillo,* 380 F.3d at 278 ("Our review of the sentencing hearing shows that the district court . . . allowed [the defendant], his defense counsel, and the prosecutor the opportunity to address the complaint at issue.")

We have held that a district court "satisfied its obligation to determine the sources of [defendant's] complaint" when the court allowed the defendant to "go on at length about his difference of opinion with [his attorney]," asked questions about the scope of the conflict, and specifically noted it was trying "to get on the record exactly all of those sources of conflict." *Marrero*, 651 F.3d at 465–66. Even when "counsel's explanation was less than detailed" and the district court's inquiry into the substance of a defendant's complaint was "less than searching," we have held that this factor was at least neutral and "fail[ed] to tip the scales in [the defendant's] favor." *Whitfield,* 259 F. App'x at 834.

Although the district court's inquiry into Chapman's complaint could have been more searching, we determine that it was adequate under our precedent. Chapman contends, however, that the district court erred in three main ways.

First, Chapman claims that *Iles* requires the court to *initiate* an inquiry, and that the district court failed in its responsibility to do so by conducting the inquiry only upon Chapman's request. But the rule established in *Iles* is more nuanced. *See* 906 F.2d at 1131. The *Iles* court affirmed

9

"the general principle that a district court usually must engage a defendant in person where he has expressed dissatisfaction with counsel and has sought to have him removed." *Id.* A review of the record shows the district court "engaged" Chapman at the beginning of the sentencing hearing:

> THE COURT: Our next matter is not until 11:00, Ronricus Chapman.
>
> MS. FREE: Your Honor, if we can address, Mr. Chapman filed a letter requesting the appointment of different counsel. And I didn't know if Your Honor wanted to take that up prior to 11:00 o'clock or what Your Honor wanted to do in that regard.
>
> THE COURT: Is Mr. Chapman here?
>
> THE MARSHAL: Yes.
>
> THE COURT: Hold on just a second. Are you ready to talk about it?
>
> MS. FREE: Your Honor, he filed his own letter. I have not had the chance to speak with him about it. There are some issues in the letter that are concerning. And it's up to Your Honor. If you want to address it now, I'm more than happy—
>
>  . . . .
>
> THE COURT: Okay. We need to wait until [the prosecutor]'s available. Why don't you—Marshal, if you can make Mr. Chapman available to Ms Free, maybe let her speak with him a few minutes before. And then we'll just plan to come back at 11:00 and take up—I've read his letter, I know what's in the letter.
>
> We'll take that up. And then depending on the outcome of that, we will either proceed with sentencing or decide how we need to handle it.
>
> MS. FREE: Yes, sir.
>
> THE COURT: All right. Thank you. Let's recess until 11:00 o'clock.
>
> (Recess Taken.)
>
> (Defendant Present.)
>
> THE COURT: This is in the matter of U.S. versus Ronricus Chapman, 17-10003. We're here today for a sentencing in Mr. Chapman's matter.
>
> Ms. Free, I know you had mentioned that Mr. Chapman had sent a letter to the Court. And I had read the letter earlier, but I read it again during the recess.
>
> Is there anything we need to take up in that regard?
>
> MS. FREE: Your Honor, I believe so. I believe that Mr. Chapman would like to address the Court based upon his letter.
>
> THE COURT: All right. Come up to the podium, if you will.
>
> Go ahead, Mr. Chapman.

DE 291, Sentencing Hearing Tr., Page ID 851–52.

Second, Chapman alleges that the "district court hedged around Mr. Chapman's central complaint—the total lack of communication between Mr. Chapman and his attorney." CA6 R. 24, Appellant Br., at 18. He later phrases his claim in stronger language, claiming that, "[t]he district court did not make any reference [to] Mr. Chapman's central complaint, which that [sic] it was unable to get in contact with counsel." *Id.* at 19. Chapman's brief focuses on the communication issue as the crux of his complaint. As a threshold matter, however, the government is correct in stating that both Chapman's letter and his statements at the sentencing hearing did not clearly indicate that lack of communication was Chapman's "central complaint."

Chapman instead detailed a number of complaints with his overall defense in his letter requesting substitute counsel: delay in receiving his PSR, trouble getting in touch with Free, concern that Free did not visit frequently enough, postponement of his sentencing, his housing in Obion County without access to a law library, the lack of a motion for discovery, and his perception that counsel was not "giving me her full potential." DE 235, Sealed Letter, Page ID 485–86. In his subsequent statement to the district court, he listed similar concerns: that he was "misled"; that Free did not file a motion for discovery; that he was housed in Obion County without access to a law library; that he received the PSR the day before his sentencing was originally scheduled; that he left messages for counsel and she did not respond; and that his sentencing was postposed at the government's request. DE 291, Sentencing Hearing Tr., Page ID 851–53.

Even assuming Chapman did emphasize lack of communication as his chief complaint, Free and Chapman each indicated that they had been in contact multiple times. Chapman said he spoke with Free on November 26, and once more between November 26 and the sentencing hearing on January 2, 2018. Free told the district court she had "been to Union City" on "multiple

occasions" to discuss "parts of the discovery." *Id.* at 859–60. Free said that she "went through the presentence report page by page" with Chapman at the November 26 meeting. *Id.* at 860.

Third, Chapman contends that the district court did not consider, or only considered after denying his motion for new counsel, his concerns that Free failed to object to the PSR. While the district court perhaps could have engaged in a more searching inquiry on this issue, the record indicates that the district court considered Chapman's communication with Free about his objections, as well as his alleged inability to lodge those objections.

The district court considered Chapman's letter—which included the complaints about his PSR—and asked Chapman to detail his issues with Free. The court then considered the issues Chapman raised in turn and indicated that, based on its initial inquiry, it did not "see anything that would make [the court] believe that Ms. Free is not doing her job the way she's supposed to." DE 291, Sentencing Hearing Tr., Page ID 856. The court then asked Free to address the issues Chapman raised, and Free specifically addressed the PSR. Although the court perhaps could have asked more questions of both Chapman and Free about the PSR, it did squarely address the issue of Chapman's objections to the PSR:

> THE COURT: Now, Ms. Free, the only thing that is in [Chapman's] letter that I wanted to be sure that we're all on the same page, Mr. Chapman seems to indicate that he did have some objections to the presentence report. Obviously, if that's the case—and, I mean, if you believe that Mr. Chapman has some legitimate objections or concerns about the presentence report, then that would be something I would consider.
>
> But other than that, everything else pretty well seems to me to go to his decision to enter his guilty plea and the fact that the sentencing hearing was continued. But I don't see how he was prejudiced in any way by that.

*Id.* at 861–62.

The district court also gave Chapman an opportunity to discuss his objections with Free and asked Free to present Chapman's objections to the court in the following exchange:

> THE COURT: So I guess my only question is, from your standpoint as counsel for Mr. Chapman, are there any objections that maybe weren't previously disclosed that Mr. Chapman has or that you believe are legitimate concerning his sentence?
>
> MS. FREE: There were none that I am aware of. If Your Honor would like to hear from him as to what those specifically are, if Your Honor would like me to take a couple of minutes and meet with him and figure out what those might be.
>
> THE COURT: Well, why don't you take just a minute and speak with him . . . . concerning the presentence report that he was concerned about that hasn't been disclosed.

*Id.* at 862.

> After the attorney-client conference, Free explained:
>
> MS. FREE: Your Honor, the objections that he had were as to Page 13 and Page 14, Page 15. It was simple possession of cocaine, a theft, ultimately a simple possession of Schedule III. He was attributed two points on each of those.
>
> And I explained to him the conviction date was 10 years, was 10 years prior to this offense occurring. However, he was revoked to [serve] those sentences, so that's why the points do count in that regard. And I explained that to him. And those were his objections, the additional objections.

*Id.*

Thus, the district court inquired into the alleged issues with the PSR and considered Chapman's objections before moving on to sentencing. The record contradicts Chapman's claim that the court's decision to deny his request for substitute counsel was "wholly unrelated to his communication (rather, lack of) with counsel" regarding the PSR and his other complaints. CA6 R. 24, Appellant Br., at 20.

For the foregoing reasons, the district court's inquiry was adequate and weighs in favor of holding that the district court acted within its discretion in denying Chapman's motion to substitute counsel.

## C.

Chapman alleges that the district court should have granted his motion for substitute counsel because he was unable to communicate with Free regarding his PSR. The crux of his

complaint is that he "wanted to discuss concerns relating to his criminal history points, and whether they counted for purposes of the guidelines, key facts alleged in the PSR, and other items that he recalled being inaccurate, with counsel. But he was unable to, because he could not get in touch with [counsel]." *Id.* at 21. As described above, however, Chapman was able to communicate with Free about his PSR. She went through the PSR "page by page" with him on November 26, met with him again after that meeting, and discussed the objections with him at the direction of the court in the sentencing hearing. While the frequency of such contact may not have been satisfactory to Chapman, substitute counsel is only required when "the extent of the conflict between the attorney and client . . . was so great that it resulted in a *total lack of communication* preventing an adequate defense." *Mack*, 258 F.3d at 556 (emphasis added). Chapman has not met his burden here.

Further, Chapman's allegations in his letter and in the hearing indicate that the root of his issue with counsel about the PSR was not lack of communication, but rather disagreement with her. However, "a defendant's differences of opinions with his attorney do not create a complete breakdown of communication that compromises his defense." *Marrero*, 651 F.3d at 466. As the Sixth Circuit has previously explained, a defendant's "dissatisfaction with the responses he got from his lawyer" fails to establish a total lack of communication. *Saldivar-Trujillo,* 380 F.3d at 278. Here, Chapman had opportunities to discuss his objections with Free. As Free explained to the district court, Chapman took issue with the way points were attributed to him based on his criminal history, but Free explained that, in her assessment, the points were calculated correctly. The crux of Chapman's complaint regarding the PSR was that he disagreed with Free's assessment, not that he totally lacked communication with her. Because Chapman did not experience "a total lack of communication" that prevented "an adequate defense," and because much of his complaint

seems to stem from disagreement with counsel, this factor weighs in favor of affirming the district court's decision.

D.

A grant of a defendant's request to substitute counsel will "almost certainly necessitate a last-minute continuance," *Whitfield*, 259 F. App'x at 834 (6th Cir. 2008) (quotation marks omitted), that may result in a delay of the administration of justice, *Marrero*, 651 F.3d at 467. Accordingly, we must balance a defendant's Sixth Amendment rights against the public's interest in the efficient and effective administration of justice. *Iles*, 906 F.2d at 1131 n.8. On the one hand, "more than simply a delay must be shown to justify denying a motion to substitute counsel. If not, then this factor would always weigh against the defendant." *Cobb v. Warden, Chillicothe Corr. Inst.*, 466 F. App'x 456, 463 (6th Cir. 2012). On the other hand, when a defendant's complaints about his attorney are frivolous, granting a motion for substitute counsel will impede the efficient administration of justice. *Salvidar-Trujillo*, 380 F. 3d at 278. Further, a defendant has "little legitimate interest in obtaining new counsel" when "the court [finds] that the dispute [the defendant had] with his counsel was such as he would likely have had with any counsel." *United States v. Pittman*, 11 F. App'x 521, 526 (6th Cir. 2001).

Here, the district court may have reasoned that Chapman's complaints were grounded in "buyer's remorse," DE 291, Sentencing Hearing Tr., Page ID 857, and misunderstanding of the law, so that granting his request for substitute counsel "would actually have impeded the efficient administration of justice because his complaints about his attorney's performance were frivolous," *Salvidar-Trujillo*, 380 F. 3d at 278. This is the position the government urges the court to take.

On the other hand, as Chapman argues, he requested substitute counsel after cooperating with the government and entering a guilty plea. In other words, "[i]t was not as if [defendant]

15

requested new counsel in the middle of a trial, at the expense of great time and effort already put forth by the government." *Marrero*, 651 F.3d at 467.

Because both parties make valid points in line with relevant precedent, we conclude that the public interest does not tip the scales one way or another in deciding whether the district court abused its discretion.

III.

Overall, the timeliness of Chapman's request for substitute counsel and the consideration of the public interest are both neutral factors in the consideration of which course was proper for the district court to take in ruling on Chapman's request. However, the adequacy of the district court's inquiry into Chapman's complaints and the nature of the conflict between Chapman and his counsel tip the scale toward the conclusion that the district court did not abuse its discretion. Accordingly, we conclude that the district court did not violate Chapman's Sixth Amendment rights and affirm the decision of the district court.